**THE WESTON FIRM**
JACK FITZGERALD (257370)
*jack@westonfirm.com*
Santa Clara, CA 95051
Telephone: (408) 459-0305
Facsimile:  (480) 247-4553

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
COURTLAND CREEKMORE (182018)
*courtland@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA  92110
Telephone:     (619) 798-2006
Facsimile:     (480) 247-4553

*Counsel for Plaintiff and
The Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONALD CULLEN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX, INC.,<br><br>Defendant. | Case No: 5:11-cv-01199-EJD<br><br>Pleading Type: Class Action<br><br>**PLAINTIFF'S SUR-REPLY IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS**<br><br>Judge: The Hon. Edward J. Davila |

Plaintiff Donald Cullen respectfully submits this Sur-Reply in Opposition to Defendant Netflix, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint. For the reasons stated herein, Defendant's Motion should be denied.

## ARGUMENT

### I. Contrary to Netflix's Suggestion, the District of Massachusetts Court Did Not Hold that the Primary Jurisdiction Doctrine Requires Deference to the FCC

Throughout its Reply, Netflix continuously mischaracterizes the district court's order in *National Association of the Deaf v. Netflix, Inc.*, 2011 U.S. Dist. LEXIS 130443 (D. Mass. Nov. 10, 2011), relying heavily on selective quoting of the *Hearing Transcript* but failing to attach, cite or even acknowledge the court's *decision*. *See* Reply (Dkt. No. 33) at 1:4-16, 3:1-20.

The court did not, as Netflix asserts, "grant [its] motion." Reply at 3:12. Rather, the court held "dismissal under the 'primary jurisdiction analysis' would be improper ," and "Defendant's Motion to Dismiss . . . is hereby DENIED," *Nat'l Assoc. of the Deaf*, 2011 U.S. Dist. LEXIS 130443, at *2-3. Thus, Netflix's argument that "[h]ere, as in *NAD v. Netflix* . . . the primary jurisdiction doctrine requires deference to the FCC," Reply at 3:19-20, is based on a gross mischaracterization of the court's order in that case and should be rejected.

Netflix similarly mischaracterizes the court's order when it claims "the court rejected plaintiffs' and the DOJ's position." Reply at 3:8. In fact, the court rejected *Netflix's* position when it declared that dismissal under the primary jurisdiction doctrine would be "improper" and further held, "Defendant's arguments with regard to Plaintiffs' lack of standing and the 'first-filed' rule are ***unpersuasive***." *Id.* at *2 (emphasis added)

### II. Netflix's February 2011 Statement about Viewing Coverage is an Actionable Representation on Which a Consumer Could Reasonably Rely

In its Reply, Netflix erroneously argues, for the first time, that its February 2011 statement—that it "expect[s] to get to 80% viewing coverage by the end of 2011"—is "an opinion statement about future events, not an actionable representation on which a consumer would reasonably rely." Reply at 15:3-8. The case on which Netflix relies for this assertion, *Neu-*

1

1  *Visions Sports v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303 (2000), is easily distinguishable.
2  *Neu-Visions* involved plaintiffs who sued under the tort theory of negligent misrepresentation,
3  not under any of the statutes at issue in this case. *Id*. at 305.
4        Additionally, even if *Neu-Visions* was applicable in the instant case, the court held that
5  there are exceptions to the rule on which Defendant relies, including:
6      when one party states an opinion as a fact, or "when one party possesses [or holds
7      [himself] [herself] out as possessing] superior knowledge or special information
8      regarding the subject of a representation, and the other party is so situated that
9      [he] [she] may reasonably rely upon such supposed superior knowledge or special
10     information, a representation made by the party possessing [or holding [himself]
11     [herself] out as possessing] such knowledge or information will be treated as a
12     representation of fact although if made by any other person it might be regarded
13     as an expression of opinion."
14 *Id.* at 308 (alterations in original, citations omitted). This exception would be applicable here,
15 where the representation about Netflix's service offerings was made by Neil Hunt, its Chief
16 Product Officer. SAC ¶¶ 17, 28. A Chief Product Officer holds himself out as a party possessing
17 superior knowledge regarding products offered by his company, and under such circumstances, it
18 would be reasonable for a consumer to rely on that superior knowledge. As such, Mr. Hunt's
19 representation should be treated as a representation of fact, even if it would be regarded as an
20 expression of opinion coming from someone else.
21       But *Neu-Visions* is also factually distinguishable. The statement at issue concerned the
22 value at which a piece of real property would be appraised in the future by a person other than
23 the one making the estimation to the plaintiffs. *Neu-Visions*, 86 Cal. App. 4th at 310. The Court
24 found that because the estimator "was not a professional appraiser, . . . plaintiffs knew that he
25 was not a professional appraiser," and real property "[v]alue is quintessentially a matter of
26 opinion," so that the "representation was merely the expression of an opinion as to a future fact."
27 *Id*. In this action, by contrast, Mr. Hunt was an expert on the subject of his representation and
28

2

Plaintiff had no reason to doubt his expertise. Mr. Hunt was also speaking directly for Netflix, rather than predicting the actions of a third party to which he had no connection. Moreover, unlike Mr. Cullen, the plaintiffs in *Neu-Visions* had experience with similar real estate projects and thus "understood the risk that the property might appraise for less . . . ." *Id.* at 311.

The other case on which Netflix relies, *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351 (2003), is similarly distinguishable and unhelpful to Netflix. While it is true the court found the statement at issue did not violate the UCL, FAL, or CLRA because it was true, *id.* at 1360, the court also found that Plaintiff could not support a claim he was misled by the *implication* of the statement because he had not claimed to have been misled by such implication, *id.* Here, Plaintiff has clearly alleged that he was misled by Mr. Hunt's statement. SAC ¶¶ 28-32. Additionally, contrary to Defendant's assertion, Plaintiff does in fact "dispute [that] the statement was true," Reply at 15:13. *See id.*; SAC ¶¶ 33-40. Finally, the *Consumer Advocate*s court goes on to deny Defendant's summary judgment on other statements based on the very proposition which Defendant's rely on this case to refute—A "[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable," *Consumer Advocates*, 113 Cal. App. 4th at 1362 (quoting *Day v. AT&T Corp.*, 63 Cal.App.4th 325, 332–33 (1998)).

## **CONCLUSION**

For all the foregoing reasons, and the reasons state in its Opposition papers, Plaintiff respectfully requests the Court deny Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint.

3

1 | DATED: January 5, 2012  Respectfully submitted,

/s/Jack Fitzgerald
Jack Fitzgerald

**THE WESTON FIRM**
JACK FITZGERALD
2811 Sykes Ct.
Santa Clara, CA 95051
Telephone: (408) 459-0305
Facsimile:  (480) 247-4553

**THE WESTON FIRM**
GREGORY S. WESTON
MELANIE PERSINGER
COURTLAND CREEKMORE
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:  (619) 798 2006
Facsimile:   (480) 247 4553

*Counsel for Plaintiff and
The Proposed Class*