1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DONALD CULLEN,

                    Plaintiff,

        v.

NETFLIX, INC.,

                    Defendant.
_____/

CASE NO. 5:11-cv-01199-EJD

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND**

[Docket No. 31]

Presently before the court is Defendant Netflix, Inc.'s ("Netflix") Motion to Dismiss the Second Amended Complaint ("SAC") filed by Plaintiff Donald Cullen ("Cullen"), on behalf of himself and all others similarly situated. See Docket No. 31. Having fully reviewed the moving and responding papers, and the oral arguments of counsel presented at the hearing on January 6, 2012, Netflix's motion is GRANTED with leave to amend for the reasons described below.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The allegations contained in this section are taken largely from the SAC. Being a deaf individual, Cullen, like millions of hearing-impaired Americans, relies on closed captioning (or subtitles) to view video programs.[1] SAC, Docket No. 26, ¶¶ 4-5, 9. To ensure access to closed captioning programs, Congress enacted laws requiring video programming distributors and

_____

[1] Closed captioning is a system which displays text on a television or video screen, typically a transcription of the audio portion of the program as it occurs sometimes including non-speech elements, to provide interpretive information to viewers who need it. Id. ¶ 4.

1

Case No. 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT

1   providers to caption their video programming. Id. ¶ 5.

2        Netflix is a provider of both on-demand streaming video programming over the internet and

3   flat-rate online DVD-Video and Blu-ray Disc rental-by-mail. Id. ¶ 6. Customers of Netflix pay a

4   monthly subscription fee, which differs based on options selected. Id. Netflix began providing

5   streaming video programming in or about January 2008. Id. ¶ 16. Although Netflix has offered

6   streaming video programing since 2008, currently, only a small portion of its library is subtitled. Id.

7   ¶ 7. Cullen became a Netflix member in May 2009, initially subscribing to an "unlimited 3 DVD"

8   plan because of the streaming library's lack of captioned content. Id. ¶¶ 33, 51.

9        In a June 12, 2009 blog entry posted on Netflix's website, Neil Hunt ("Hunt"), Netflix's

10  Chief Product Officer, announced that "[c]aptioning is in our development plans," and that Netflix

11  would "expect to deliver subtitles or captions . . . and roll the same technology out to each CE

12  device as we are able to migrate the technology . . . ." Id. ¶ 17, Ex. A. Four months later, on October

13  5, 2009, Netflix's Director of Communications, Catherine Fisher, reiterated Hunt's statement in a

14  public communication with the advocacy group, the National Association of the Deaf, stating that

15  Netflix "developers continue to work on closed captioning." Id. ¶ 20, Ex. B. Over the next year,

16  Netflix made similar statements, announcing in an April 15, 2010 blog entry that 100 titles had been

17  captioned, that there was "much more to come," (id. ¶ 22, Ex. C), and in a November 22, 2010

18  "tweet" that Netflix "offers [closed captioning] on a growing [number] of titles," that could be

19  accessed from a number of devices. Id. ¶ 25, Ex. D. On February 24, 2011, Hunt represented that

20  there were "more than 3,500 TV episodes and movies" with subtitles in Netflix's streaming library

21  "representing about 30% of viewing." Id. ¶ 27. Hunt also stated that "[m]ore subtitles are being

22  added every week, and [Netflix] expect[s] to get to 80% viewing coverage by the end of 2011." Id. ¶

23  28, Ex. E.

24       Cullen alleges Netflix's statements "were designed to and did have the effect of conveying to

25  Netflix's deaf and hard of hearing members that Netflix would meaningfully subtitle its streaming

26  library within a reasonable period of time." Id. ¶ 31. Cullen and the class members relied on these

27  statements in purchasing or maintaining monthly Netflix subscriptions. Id. ¶ 32. In addition, the

28

2

Case No. 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT

1  SAC further alleges that Netflix's failure to caption imposed on Cullen and putative class members a

2  veritable "deaf tax" because the DVD-by-mail plans that gave them sufficient access to video

3  programming were sold at a significant premium (up to $11.99) to Netflix's streaming subscription.

4  Id. ¶¶ 41-49.

5      On March 11, 2011, Cullen filed a class action lawsuit in this court. See Docket No. 1.[2]

6  Cullen filed his SAC on September 9, 2011. Plaintiff brings discrimination based claims on behalf of

7  himself and similarly situated consumers under California's Unruh Civil Rights Act, Cal. Civ. Code

8  §§ 51, et seq., ("Unruh Act") and California's Disabled Persons Act, Cal. Civ. Code §§ 54, et seq.,

9  ("DPA") for Netflix's failure to provide full and equal access to its services. SAC ¶¶ 103-112. In

10 addition, Plaintiff brings consumer protection based claims under California's Unfair Competition

11 Law, Cal. Bus. & Prof. Code §§ 17200, et seq., ("UCL"), False Advertising Law, Cal. Bus. & Prof.

12 Code §§ 17500, et seq., ("FAL"), and Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, et

13 seq., ("CLRA") for Netflix's false promises, misrepresentations, and material omissions concerning

14 the amount of subtitled content, the rate at which Netflix was adding subtitled content, and the date

15 by which a substantial portion of its streaming library would be subtitled. Id. ¶¶ 72-102.

16     On October 5, 2011, Netflix filed this motion to dismiss. See Docket No. 31. On November

17 4, 2011, Cullen filed written opposition to the motion. See Docket No. 32. On November 18, 2011,

18 Netflix filed its reply brief. See Docket No. 33. On January 5, 2012, with leave of court, Cullen filed

19 his sur-reply brief. See Docket No. 40. On January 6, 2012, oral argument on the motion to dismiss

20 was heard. On March 23, 2012, Cullen and Netflix filed a joint status report regarding the impact of

21 the FCC regulations governing closed captioning of streaming video programming. See Docket No.

22 47.  On June 19, 2012, Cullen filed a statement of recent decision. See Docket No. 48. On July 9,

23 2012, Netflix filed a statement of recent decision as well. See Docket No. 49.

24

25
26 [2] Cullen's initial Complaint asserted a claim under the Americans with Disabilities Act. After being assured by the National Association of the Deaf and the Civil Rights Division of the Department of Justice that another plaintiff would pursue that claim in a separate proceeding, see
27 generally Nat'l Ass'n of the Deaf v. Netflix, Inc., No. 11-30168-MAP (D. Mass. filed June 16, 2011), Cullen amended his complaint to drop that claim. See  Opp'n Mot. To Dismiss SAC
28 ("Opp'n"), Docket No. 32, at 4 n.1.

Case No. 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT

## II.   LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief may be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1997). However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F. 3d 979, 988 (9th Cir. 2001); see also Twombly, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

On a motion to dismiss, the court's review is limited to the face of the complaint and matters judicially noticeable. MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986); N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). However, under the "incorporation by reference" doctrine, the court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic. In re Silicon Graphics, Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999).

Finally, although their claims arise under state law, Plaintiffs' allegations are subject to the Federal Rules of Civil Procedure. Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1102 (9th Cir.2003)) ("[T]he Federal Rules of Civil Procedure apply in federal court, 'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.' "). Specifically, allegations sounding in fraud are subject to the heightened pleading requirements of Fed. R. Civ. P.  9(b). See Vess, 317 F.3d at 1103–04 (if "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' [then] the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."); Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994) (claims based in fraud "must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud.").

Case No. 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT

1

**III.   DISCUSSION**

2

**A.      Discrimination Based Claims**

3       Netflix argues that Cullen's discrimination based claims must be dismissed because (1) the

4  FCC has primary jurisdiction over the critical issues; (2) the Unruh Act and DPA are preempted by

5  the 21st Century Act; and (3) Cullen fails to plead facts sufficient to state a claim under the Unruh

6  Act and the DPA. Because the court finds that Cullen's failure to state a claim is sufficient to

7  dismiss these claims, it need not address Netflix's primary jurisdiction and preemption arguments at

8  this time.

9

**1.      Violation of the Unruh Act and the DPA Based on the ADA**

10      Netflix argues that Cullen's DPA claim and Unruh Act claim both fail because they rely on a

11 violation of the Americans with Disabilities Act of 1990 ("ADA"), and Cullen cannot state a

12 violation of the ADA because Netflix's streaming library is not a place of public accommodation.

13 See Def. Netflix, Inc.'s Reply Supp. Mot. To Dismiss SAC at 9:3-4. Cullen argues that because

14 Netflix's conduct of denying hearing-impaired individuals "full and equal access" to its streaming

15 video library is a violation of the ADA, it is also a violation of the Unruh Act and the DPA. See

16 Opp'n at 5:18-19.

17      A violation of the ADA is, by statutory definition, a violation of both the Unruh Act and the

18 DPA. Cal. Civ.Code §§ 51(f), 54.l(d). Title III of the ADA prohibits discrimination in public

19 accommodations. In order to prevail on a discrimination claim under Title III, a plaintiff must show

20 that: "(1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that

21 owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied a public

22 accommodation by the defendant because of his disability." Ariz. ex rel. Goddard v. Harkins

23 Amusement Enters., 603 F.3d 666, 670 (9th Cir. 2010). The Ninth Circuit has held that a "place of

24 public accommodation" under the ADA, is limited to "an actual physical place." Weyer v. Twentieth

25 Century Fox Film Corp., 198 F.3d 1104, 1114 (9th Cir. 2000).

26      Other circuits which have suggested that a "place of public accommodation" has a more

27 expansive meaning. See, e.g., Carparts Distribution Ctr., Inc. v. Automotive Wholesalers Assoc. of

28

5

1   New England, Inc., 37 F.3d 12, 19–20 (1st Cir.1994) (holding that "public accommodations" are not

2   limited to actual physical structures); Doe v. Mutual of Omaha Ins. Co., 179 F.3d 557, 559 (7th Cir.

3   1999) (noting, in dicta, that a "place of public accommodation" encompasses facilities open to the

4   public in both physical and electronic space). Applying First Circuit law, a court in the District of

5   Massachusetts recently held that the ADA applies to Netflix's streaming video library, which "falls

6   within at least one, if not more, of the enumerated ADA categories." Nat'l Ass'n of the Deaf v.

7   Netflix, Inc., No. 11-CV-30168-MAP, 2012 WL 2343666, at *3 (D. Mass. June 19, 2012).

8          This court, however, must adhere to Ninth Circuit precedent. See Ky Minh Pham v.

9   Hickman, 262 Fed. Appx. 35, 39 (9th Cir. 2007) ("[I]n the absence of Supreme Court law, [a district

10  court] is bound to follow Ninth Circuit precedent."). Applying Weyer, courts in this District have

11  held that websites are not places of public accommodations under the ADA because they are not

12  actual physical places. See, e.g. Nat'l Fed'n of the Blind v. Target Corp., 452 F. Supp. 2d 946, 952

13  (N.D. Cal. 2006) (holding that the ADA can only apply to a website when "there is a 'nexus'"

14  alleged between the challenged conduct and defendant's "physical space.");[3] Young v. Facebook,

15  Inc., 790 F. Supp. 2d 1110, 1115 (N.D. Cal. 2011) (dismissing ADA claim against Facebook in part

16  because "Facebook operates only in cyberspace, and is thus is not a 'place of public

17  accommodation' as construed by the Ninth Circuit."); Earll v. eBay, Inc., No. 5:11-CV-00262-JF

18  HRL, 2011 WL 3955485, at *2 (N.D. Cal. Sept. 7, 2011) (holding that eBay's website is not a place

19  of public accommodation under the ADA) .

20         Here, Netflix's streaming video library is a website where consumers can access videos with

21  an internet connection. SAC ¶ 16. The Netflix website is not "an actual physical place" and

22  therefore, under Ninth Circuit law, is not a place of public accommodation. See Weyer, 198 F.3d at

23  1114. Because the website is not a place of public accommodation, the ADA does not apply to

24  access to Netflix's streaming library. Thus, Cullen's claim that Netflix failed to provide full and

25  equal access under the DPA and the Unruh Act cannot rest on Netflix's alleged failure to comply

26

27  _____

28        [3] Cullen has not alleged a "nexus" between Netflix's streaming video website and an actual
    physical space.

6

Case No. 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT

1   with the ADA.

2       This conclusion, however, does not necessarily render Cullen's DPA and Unruh Act claims

3   meritless. Cullen may be able to pursue his discrimination claims if they are asserted as independent

4   claims separate from an ADA violation because both the Unruh Act and the DPA apply to websites

5   "as a kind of business establishment and an accommodation, advantage, facility, and privilege of a

6   place of public accommodation, respectively. No nexus to [a] physical [place] need be shown." Nat'l

7   Fed'n of the Blind, 582 F. Supp. 2d at 1196.

8           **2.    Independent Violation of the Unruh Act**

9       The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and

10  equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations,

11  advantages, facilities, privileges, or services in all business establishments of every kind

12  whatsoever." Cal. Civ. Code § 51(b).

13       A violation of the Unruh Act may be maintained independent of an ADA claim only where a

14  plaintiff pleads "intentional discrimination in public accommodations in violation of the terms of the

15  Act." Munson v. Del Taco, Inc., 46 Cal. 4th 661, 668 (2009) (quoting Harris v. Capital Growth

16  Investors XIV, 52 Cal. 3d 1142, 1175 (1991)). To prove intentional discrimination there must be

17  allegations of "willful, affirmative misconduct," and the plaintiff must allege more than the

18  disparate impact of a facially neutral policy on a particular group. Koebke v. Bernardo Heights

19  Country Club, 36 Cal. 4th 824, 854 (2005); Young, 790 F. Supp. 2d at 1116.

20       Thus, to sufficiently state a cause of action under the Unruh Act, Cullen's claim cannot be

21  based solely on the disparate impact of Netflix's policies on hearing-impaired individuals but must

22  be grounded in allegations of intentional discrimination. See id. Here, Cullen alleges that Netflix did

23  not caption a meaningful amount of its streaming library at the rate consumers expected (SAC ¶ 53),

24  and its streaming library is not accessible to hearing-impaired individuals because only a small

25  portion of it is subtitled (id. ¶¶ 7, 105). These allegations describe a policy with a disparate impact

26  on hearing-impaired individuals, but do not describe willful, affirmative misconduct. Furthermore,

27  the SAC also includes allegations demonstrating Netflix's efforts to improve access for hearing-

28

Case No. 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT

impaired customers that offset an inference of intentional discrimination. For example, the rate at which Netflix is captioning content has continued to increase since 2008. See id. ¶¶ 36-39 (listing average number of captioned titles added per day since 2008 (0.64), since 2009 (1.16), since 2010 (2), and the current rate (2.33)). Thus, Cullen has not pleaded intentional discrimination. See Koebke, 36 Cal. 4th at 854. Because the SAC does not adequately plead an intentional discrimination claim under the Unruh Act, Netflix's motion to dismiss Cullen's Unruh Act claim is GRANTED with leave to amend.

### 3.    Independent Violation of the Disabled Persons Act

The DPA provides that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, . . . places of public accommodation, amusement, or resort, and other places to which the general public is invited . . . ." Cal. Civ. Code § 54.1(a)(1). "'Full and equal access' is defined by section 54.1 to mean access that complies with the regulations developed under the federal ADA or under state statutes, if the latter imposes a higher standard." Cal. Civ. Code § 54.1(a)(3); Urhausen v. Longs Drug Stores Cal., Inc., 155 Cal. App. 4th 254, 263 (Cal. App. 2007). Thus, "[a]n independent DPA claim requires a showing that accessibility regulations promulgated under California law exceed those set by the ADA." Earll, 2011 WL 3955485, at *3 (citing Cal. Civ. Code § 54.1(a)(3) and Urhausen, 155 Cal. App. 4th at 263).

Cullen, however, has not pointed to any relevant standards established by California law that exceed those set by the ADA. Thus, Cullen has failed to plead facts sufficient to allege that Netflix has failed to provide full and equal access as defined by the DPA. Netflix's motion to dismiss Cullen's DPA claim therefore is GRANTED with leave to amend.

### B.    Consumer Protection Based Claims

### 1.    UCL, FAL, and CLRA Claims Based on Misrepresentation

Cullen also alleges Netflix violated the UCL, FAL, and CLRA through its omissions and misrepresentations about the streaming video library's closed captioning, which had the "effect of conveying to Netflix's deaf and hard of hearing members that Netflix would meaningfully subtitle

Case No. 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT

1  its streaming library within a reasonable period of time." SAC ¶ 31; see also ¶¶ 79, 89, 93, 98

2  (alleging misrepresentations and omissions violated the "fraudulent" prong of the UCL, the FAL,

3  and the CLRA). Netflix argues that Cullen has failed to allege facts showing Netflix's

4  representations were false or misleading according to the reasonable consumer standard.

5        The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. &

6  Prof. Code § 17200. The FAL makes it unlawful for a business to disseminate any statement "which

7  is untrue or misleading, and which is known, or which by the exercise of reasonable care should be

8  known, to be untrue or misleading." Id. at § 17500. Any violation of the FAL constitutes a violation

9  of the UCL. Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008). The CLRA

10  prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code §

11  1770. Rule 9(b)'s heightened pleading standards apply to all UCL, FAL, or CLRA claims that are

12  grounded in fraud. See Vess, 317 F.3d at 1103-06. Under Rule 9(b), "[a]verments of fraud must be

13  accompanied by the 'who, what, when, where and how' of the misconduct charged." Kearns v. Ford

14  Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Vess, 317 F.3d at 1106).

15        These laws prohibit not only advertising which is false, but also advertising which, although

16  true, is either misleading or which has a capacity, likelihood or tendency to deceive or confuse the

17  public. Williams, 552 F.3d at 938. UCL, FAL, and CLRA claims grounded in fraud are governed by

18  the "reasonable consumer" test. Id. Under the reasonable consumer standard, the plaintiff must

19  "show that members of the public are likely to be deceived." Id. (internal citations omitted).

20        California courts "have recognized that whether a business practice is deceptive will usually

21  be a question of fact not appropriate for decision on [a motion to dismiss]." Id. However, courts have

22  occasionally dismissed complaints as a matter of law because they did not meet the "reasonable

23  consumer" standard. See Freeman, 68 F.3d at 289 (affirming dismissal of UCL, FAL, and CLRA

24  claims because statements promising sweepstakes payout in exchange for purchasing magazine

25  subscription unlikely to deceive "person of ordinary intelligence.").

26       **a. Representation that Netflix Had Meaningfully Captioned Content**

27        Cullen alleges that Netflix's statements made between June 12, 2009 and February 24, 2011,

28

9

Case No. 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT

1    which are discussed individually below, combined together had the effect of conveying to Netflix's

2    deaf and hard of hearing members that Netflix would "meaningfully" subtitle its streaming library

3    within a "reasonable" period of time, and that it would provide related technology in a variety of

4    hardware platforms. SAC ¶ 32. Cullen further alleges that Netflix's streaming video library is

5    effectively useless due to the small amount of captioned content, lack of support tools, and slow

6    captioning rate. Id. ¶ 33. Netflix argues that Cullen never alleges Netflix represented it had

7    "meaningfully" captioned its content and that, even if Netflix had made that representation, a vague

8    statement to provide meaningful captioning does not express an objectively verifiable fact actionable

9    under the UCL, FAL, or CLRA.

10        "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a

11    reasonable consumer could not rely, and hence are not actionable." Oestreicher v. Alienware Corp.,

12    544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (internal quotation marks and citations omitted), aff'd by

13    322 Fed. Appx. 489 (9th Cir. 2009). Vague or highly subjective claims about product superiority

14    amount to non-actionable puffery; only "misdescriptions of specific or absolute characteristics of a

15    product are actionable." Id. (quoting Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145

16    (9th Cir. 1997)).

17        Here, Cullen rests his claims on Netflix's representations that implied Netflix had

18    "meaningfully" captioned its content.  A representation that the captioned content is at meaningful

19    level is a vague and subjective claim and therefore is not actionable under the UCL, FAL, or CLRA.

20    See, e.g., id.; Edmunson v. Proctor & Gamble Co., No. 10-CV-2256-IEG (NLS), 2011 U.S. Dist.

21    LEXIS 53221, at *10–12 (S.D. Cal. May 17, 2011) (dismissing UCL and CLRA claims; statement

22    that product is "superior" is "subjective representation," not an objectively verifiable fact); Baltazar

23    v. Apple, Inc., No. CV-10-3231-JF, 2011 WL 3795013, at *4-6 (N.D. Cal. Aug. 26, 2011)

24    (dismissing UCL, FAL, and CLRA claims; statement that the iPad can be used "just like a book" is

25    mere puffery). Thus, the court proceeds by individually evaluating the allegedly deceptive

26    statements upon which Cullen bases his UCL, FAL, and CLRA claims.

27

28

10

Case No. 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT

1

**b. Allegations Regarding Deceptive Statements**

2        Cullen first argues that Hunt's June 12, 2009 blog entry that Netflix would "expect to deliver

3    subtitles or captions to Silverlight clients sometime in 2010, and roll the same technology out to

4    each CE device as [Netflix is] able to migrate the technology" is deceptive because it falsely

5    attributed Netflix's failure to caption content sooner on technical difficulties. SAC ¶¶ 17-18. The

6    SAC, however, does not plead facts in support of the conclusory allegation that this attribution is

7    false. The SAC alleges that other streaming video content providers were captioning content with

8    existing technology, which Netflix also could have used. Id. ¶ 18. But the fact that another, better

9    technology existed does not contradict the representation that Netflix's captioning rate was limited

10   by technical difficulties, much less state a plausible claim that Netflix's statement was false or

11   misleading. Therefore, the SAC fails to allege any facts showing that Hunt's June 12, 2009 blog

12   entry is likely to deceive members of the public.

13       Cullen also argues that Netflix's statements between October 5, 2009 and November 22,

14   2010 were misrepresentations. Specifically, Netflix said it would "continue to work on closed

15   captioning," that there was "much more to come," similar technology would soon be released for

16   Netflix's other platforms, and closed captioning was offered on a growing number of titles. Id. ¶¶

17   20- 25. Cullen fails to allege facts in support of his allegation that these statements were false and

18   misleading. Rather, the SAC pleads facts indicating that these statements were true. According to the

19   SAC, the rate at which Netflix has added captioned titles to its streaming library has continued to

20   increase since 2008. See id. ¶¶ 36-39. These alleged facts are consistent with Netflix's

21   representations that it is working on closed captioning and more titles with closed captioning would

22   be added to the library. Thus, the SAC fails to allege facts sufficient to state a plausible claim that

23   Netflix's statements between October 5, 2009 and November 22, 2010 are likely to deceive

24   members of the public.

25       Additionally, Cullen bases his UCL, FAL, and CLRA claims on statements Hunt made in a

26   February 24, 2011 blog entry. In this blog entry, Hunt stated that  there are "more than 3,500 TV

27   episodes and movies" with subtitles in Netflix's streaming library "representing about 30% of

28

11

Case No. 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT

1    *viewing*. More subtitles are being added every week and we expect[4] to get to 80% *viewing coverage*

2    by the end of 2011." Id. ¶ 27-28; Ex. E (emphasis added). The SAC alleges that "only about 6% of

3    Netflix's streaming video programming was captioned" and "Netflix's promise to caption 80% of its

4    library by the end of 2011 is not reflected in its behavior." Id. ¶ 35, 40. These allegations about the

5    percentage of captioned programming, a number based on the total number of titles in the library, do

6    not contradict Netflix's claim that the captioned titles represent 30% of viewing, a usage-based

7    number, or that Netflix expected to reach 80% viewing coverage by the end of 2011.

8         In opposition to the motion to dismiss, Cullen argued that regardless of what Hunt meant

9    when he made the statement, a reasonable consumer would understand Hunt's representation that

10   30% of viewing is captioned to mean that 30% of titles are captioned and would understand 80%

11   veiwing coverage to mean 80% of the titles in Netflix's library. See Tr. at 25-26, 29, Docket No. 42;

12   Opp'n at 24: 12-19. The SAC, however, does not contain these allegations or any other allegations

13   about the misleading nature of this usage-based measurement and therefore fails to allege facts

14   sufficient to state a plausible claim that Hunt's February 24, 2011 blog entry is likely to deceive

15   members of the public.

16        For the reasons above, Netflix's motion to dismiss Cullen's claims under the fraudulent

17   prong of the UCL, the FAL, and the CRLA is GRANTED with leave to amend.

18        **2.    UCL Claims Based on Unlawful Prong**

19        Cullen's "unlawful" claims under the UCL rely on his other causes of actions.  Because

20   Cullen's other claims fail, his UCL claims premised on "unlawful" acts has no basis and must also

21   fail. See Ingels v. Westwood One Broad. Servs., Inc., 28 Cal. Rptr. 3d 933, 938 (Cal. App. 2005)

22   ("If the [underlying] claim is dismissed, then there is no 'unlawful' act upon which to base the

23

24   _____

25   [4]Netflix argues that the statement about Hunt's expectation of reaching 80% viewing
     coverage is an opinion about future events and not an actionable representation on which a consumer
     would reasonably rely. In support of this argument, Netflix cites to Neu-Visions Sports v.
26   Soren/McAdam/Bartells, 86 Cal. App. 4th 303, 309-310 (2000), in which the court held that, under a
     theory of  negligent misrepresentation, an "actionable misrepresentation must be made about past or
27   existing facts; statements regarding future events are merely deemed opinions." Netflix has not
     cited, and this court has not found, any cases holding that statements about future facts are not
28   actionable under the UCL, FAL, or the CLRA.

                                              12
     Case No. 5:11-CV-01199-EJD
     ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED
     COMPLAINT

derivative [UCL] claim."); <u>Pantoja v. Countrywide Home Loans, Inc.</u>, 640 F. Supp. 2d 1177,
1190–1191 (N.D. Cal. 2009) (dismissing UCL claim because court dismissed "all . . . predicate
violations"). Thus, Netflix's motion to dismiss Cullen's claims under the unlawful prong of the UCL
is GRANTED with leave to amend.

### 3. UCL Claims Based on the Unfair Prong

An unfair business practice under the UCL is "one that either offends an established public
policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."
<u>McDonald v. Coldwell Banker</u>, 543 F.3d 498, 506 (9th Cir. 2008) (omitting internal citations). To
test whether a business practice is unfair, the court must weigh the utility of the defendant's conduct
against the gravity of the harm to the alleged victim. <u>Bardin v. Daimlerchrysler Corp.</u>, 136 Cal. App.
4th 1255, 1268 (2006)(omitting internal citations).

Cullen's claims under the unfair prong of the UCL rely partly on allegations about Netflix's
deceptive statements and statutory violations. As discussed above, the SAC does not allege facts
sufficient to state a plausible claim that Netflix's conduct was misleading or otherwise unlawful,
thus Netflix's unfair prong claims are insufficient in that respect.

Additionally, Cullen claims Netflix's failure to caption imposed on hearing-impaired
individuals a veritable "deaf tax" because the DVD-by-mail plans that provide sufficient access to
video programming were sold at a significant premium to Netflix's streaming subscription. <u>See</u> SAC
¶¶ 41-49. Cullen alleges this practice is "immoral, unscrupulous, and offends public policy . . . [and]
the gravity of Netflix'[s] conduct outweighs any conceivable benefit of such conduct." <u>Id.</u> ¶ 74.
According to the SAC, Cullen must purchase Netflix's "unlimited 2 DVD" plan to meet his viewing
needs. <u>Id.</u> ¶ 46. On November 22, 2010, the difference between the "unlimited 2 DVD" plan and the
streaming-only plan was $7 per month. <u>Id.</u> ¶ 41. On July 12, 2011, Netflix changed its plans and
provided customers the option of plans with (1) streaming only; (2) DVDs only; (3) or DVDs and
streaming. <u>Id.</u> ¶ 47. At the time the SAC was filed, Cullen subscribed to Netflix's "unlimited 2
DVD" and unlimited streaming plan; the difference between this plan and the streaming-only plan
was $11.99. <u>Id.</u> ¶¶ 47, 49. Cullen has not alleged facts about any potential utility of charging a

Case No. 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT

higher subscription fee for the more accessible DVD-by-mail plan than for the streaming-only plan price. Thus, Cullen has not stated a plausible claim that the gravity of the harm outweighs the utility of the conduct and thus that the price difference is immoral or unscrupulous. Netflix's motion to dismiss Cullen's claims under the unfair prong of the UCL therefore is GRANTED with leave to amend.

## IV.   ORDER

Based on the foregoing, Netflix's Motion to Dismiss is GRANTED WITH LEAVE TO AMEND. Any amended complaint shall be filed no later than 30 days from the date this order is filed.

**IT IS SO ORDERED.**

Dated: July 13, 2012

_____
EDWARD J. DAVILA
United States District Judge

Case No. 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT