DAVID F. MCDOWELL (CA SBN 125806)
JACOB M. HARPER (CA SBN 259463)
MORRISON & FOERSTER LLP
555 West Fifth Street, Suite 3500
Los Angeles, California  90013-1024
Telephone:    213.892.5200
Facsimile:     213.892.5454
Email:          DMcDowell@mofo.com
                     JacobHarper@mofo.com

Attorneys for Defendant
NETFLIX, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONALD CULLEN, on behalf of himself and all others similarly situated,<br><br>                     Plaintiff,<br><br>     v.<br><br>NETFLIX, INC.,<br><br>                    Defendant. | Case No.      5:11-cv-01199-EJD<br><br>**DEFENDANT NETFLIX, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT; STATEMENT OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Fed. R. Civ. P. 12(b)(6)]**<br><br>Date:             September 24, 2012<br>Time:            10:00 a.m.<br>Judge:           Hon. Edward J. Davila<br>Courtroom:    1 |

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION AND SUMMARY OF ALLEGATIONS ........................................... 4

II.    LEGAL STANDARDS .................................................................................................. 6

III.   CULLEN LACKS STATUTORY STANDING ............................................................. 6

    A.    Cullen Did Not Lose Money or Property "As a Result of"
        Netflix's Actions (UCL, FAL, CLRA Causes of Action)...................................... 6

    B.    Netflix's Streaming Videos Do Not Constitute a "Tangible"
        Good or Service (CLRA Cause of Action) ............................................................ 9

IV.    EVEN IF CULLEN HAD STANDING, HE FAILS TO STATE A CLAIM ................. 10

    A.    Cullen Again Fails to Allege Facts Showing Netflix
        Made Actionable Misrepresentations (Alleged Under
        UCL "Unfair" or "Fraudulent" Prongs, FAL, and CLRA) ................................. 11

    B.    Cullen's So-Called "Deaf-Tax" Theory Again Fails to
        State a Claim (Alleged Under "Unfair" Prong of UCL)...................................... 14

        1.    Cullen does not "tether" this theory to a "constitutional,
            statutory, or regulatory provision" (First Test) ......................................... 15

        2.    Cullen does not allege facts showing "immoral" or
            "unscrupulous" conduct whose utility is outweighed
            by any harm (Second Test) ....................................................................... 16

        3.    Cullen concedes "countervailing benefits to consumers
            and competition" and that any injury "could . . . reasonably
            have been avoided"  (Third Test).............................................................. 17

    C.    Cullen's New Theory for "Lack of Adequate Support  Tools"
        Fails to State a Claim (Alleged Under UCL  "Unfair" Prong and CLRA) ........... 19

        1.    This theory does not support a claim under the
            UCL's "unfair" prong ............................................................................. 19

        2.    This theory does not support a CLRA claim............................................. 19

    D.    Cullen Also Fails to State a Claim for Violation of the
        UCL's "Unlawful" Prong....................................................................................... 20

V.     CONCLUSION ............................................................................................................. 21

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................... 6

5

*B'hood of Locomotive Eng's & Trainmen v. Surface Transportation Bd.,*
6           457 F.3d 24 (D.C. Cir. 2006) ....................................................................... 9

7

*Bardin v. DaimlerChrysler Corp.,*
    39 Cal. Rptr. 3d 634,
8           136 Cal. App. 4th 1255 (Cal. Ct. App. 2006) ........................................... 15

9

*Bell Atl. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................................... 9

10

*Berry v. American Express Publ'g, Inc.,*
11          54 Cal. Rptr. 3d 91,
    147 Cal. App. 4th 224 (Cal. Ct. App. 2007) ............................................. 10

12

*Caro v. Procter & Gamble Co.,*
13          22 Cal. Rptr. 2d 419,
    18 Cal. App. 4th 644 (Cal. Ct. App. 1993) ............................................. 8, 9

14

*Castagnola v. Hewlett-Packard Co.,*
15          No. C-11-05772,
    2012 U.S. Dist. LEXIS 82026
16          2012 WL 2159385 (N.D. Cal. June 13, 2012) .......................................... 12

17

*Consumer Advocates v. Echostar Satellite Corp.,*
    8 Cal. Rptr. 3d 22,
18          140 Cal.App.4th 1456  (Cal. Ct. App. 2003) ........................................... 11

19

*Cullen v. Netflix, Inc.,*
    __ F. Supp. 2d __,
20          2012 U.S. Dist. LEXIS 97884,
    2012 WL 2906245 (N.D. Cal. July 13, 2012) ................................... *passim*

21

*Davis v. Chase Bank U.S.A., N.A.,*
22          650 F. Supp. 2d 1073 (C.D. Cal. 2009) .................................................... 20

23

*Davis v. Ford Motor Credit Co. LLC,*
    179 Cal. App. 4th 581,
24          101 Cal. Rptr. 3d 697 (Cal. Ct. App. 2009) ....................................... 12, 18

25

*Doe v. Wal-Mart Stores, Inc.,*
    572 F.3d 677 (9th Cir. 2009)........................................................................ 6

26

*Drum v. San Fernando Valley Bar Assn.,*
27          106 Cal. Rptr. 3d 46,
    182 Cal. App. 4th 247 (Cal. Ct. App. 2010) ............................................ 15

28

## TABLE OF AUTHORITIES

**Page(s)**

CASES (CONT'D)

*Edmunson v. P&G*,
  No. 10-cv-2256,
  2011 U.S. Dist. LEXIS 53221,
  2011 WL 1897625 (S.D. Cal. May 17, 2011) ...................................................... 14

*Evans v. Chase Manhattan Bank USA, N.A.*,
  No. C-05-3968,
  2006 U.S. Dist. LEXIS 5259,
  2006 WL 213740 (N.D. Cal. Jan. 27, 2006) ........................................................ 16

*Fairbanks v. Super. Ct.*,
  205 P.3d 201,
  46 Cal. 4th 56 (Cal. 2009) ................................................................................ 10

*Ferrington v. McAfee, Inc.*,
  No. 10-cv-01455,
  2010 U.S. Dist. LEXIS 106600,
  2010 WL 3910159 (N.D. Cal. Oct. 5, 2010) ........................................................ 10

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) .............................................................................. 11

*Goodman v. HTC Am., Inc.*,
  No. C-11-1793,
  2012 U.S. Dist. LEXIS 88496,
  2012 WL 2412070 (W.D. Wash. June 26, 2012) ................................................. 10

*Hall v. Time Inc.*,
  70 Cal. Rptr. 3d 466,
  158 Cal. App. 4th 847 (Cal. Ct. App. 2008) .................................................... 6, 8

*Hoffman v. Cingular Wireless, LLC*,
  No. 06-cv-1021,
  2008 U.S. Dist. LEXIS 67573,
  2008 WL 4093722 (S.D. Cal. Sept. 4, 2008) ........................................................ 9

*In re iPhone Application Litig.*,
  No. 11-md-02250,
  2011 U.S. Dist. LEXIS 106865,
  2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .................................................... 10

*In re Late Fee & Over-limit Fee Litigation*,
  528 F. Supp. 2d 953 (N.D. Cal. 2007) .............................................................. 16

*Ingels v. Westwood One Broad. Servs., Inc.*,
  28 Cal. Rptr. 3d 933,
  129 Cal. App. 4th 1050 (Cal. Ct. App. 2005) .................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES (CONT'D)**

*Intel Corp. v. Hamidi*,
71 P.3d 296,
30 Cal. 4th 1342 (Cal. 2003)...............................................................................10

*Kaplan v. Rose*,
49 F.3d 1363 (9th Cir. 1994)................................................................................14

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)...........................................................................6, 7

*Krainski v. State ex rel. Bd. of Regents*,
616 F.3d 963 (9th Cir. 2010)..................................................................................6

*Kwikset v. Super. Ct.*,
246 P.3d 877,
51 Cal. 4th 310 (Cal. 2011)...............................................................................7, 8

*Laster v. T-Mobile USA, Inc.*,
407 F. Supp. 2d 1181 (S.D. Cal. 2005)...............................................................20

*Laster v. T-Mobile USA, Inc.*,
No. 05-cv-1167,
2009 U.S. Dist. LEXIS 116228,
2009 WL 4842801 (S.D. Cal. Dec. 14, 2009)........................................................9

*Lavie v. Procter & Gamble Co.*,
129 Cal. Rptr. 2d 486,
105 Cal. App. 4th 496 (Cal. Ct. App. 2003) .......................................................12

*Pantoja v. Countrywide Home Loans, Inc.*,
640 F. Supp. 2d 1177 (N.D. Cal. 2009) ..............................................................21

*Parvati Corp. v. City of Oak Forest*,
630 F.3d 512 (7th Cir. 2010)..................................................................................9

*Plotkin v. Sajahtera, Inc.*,
131 Cal. Rptr. 3d 303,
106 Cal. App. 4th 953 (Cal. Ct. App. 2003) .......................................................16

*Sateriale v. R.J. Reynolds Tobacco Co.*,
__ F.3d__,
2012 U.S. App. LEXIS 14394,
2012 WL 2870120 (9th Cir. July 13, 2012)...................................................4, 7, 8

*Searle v. Wyndham Internat., Inc.*,
126 Cal. Rptr. 3d 231,
102 Cal. App. 4th 1327 (Cal. Ct. App. 2002) .....................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES (CONT'D)

*Stack v. Lobo*,
    903 F. Supp. 1361 (N.D. Cal. 1995) ................................................................. 13

*Stearns v. Select Comfort Retail Corp.*,
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) ............................................................ 18

*Sumner Peck Ranch, Inc. v. Bureau of Reclamation*,
    823 F. Supp. 715 (E.D. Cal. 1993) ................................................................... 18

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................... 6, 7, 14

*Villegas v. Wells Fargo Bank, N.A.*,
    No, C-12-02004,
    2012 U.S. Dist. LEXIS 99951,
    2012 WL 2931343 (N.D. Cal. July 17, 2012) ................................ 15, 16, 18, 19

*Ward Gen'l Ins. Services, Inc. v. Employers Fire Ins. Co.*,
    7 Cal. Rptr. 3d 844 ,
    114 Cal. App. 4th 548 (Cal. Ct. App. 2003) .................................................... 10

*Wayne v. Staples, Inc.*,
    37 Cal. Rptr. 3d 544,
    135 Cal. App. 4th 466 (Cal. Ct. App. 2006) ................................................... 16

*Woods v. Google Inc.*,
    No. 05:11–cv–1263,
    2011 U.S. Dist. LEXIS 88795,
    2011 WL 3501403 (N.D. Cal. Aug. 10, 2011) ................................................... 7

*Wofford v. Apple Inc.*,
    No. 11–CV–0034,
    2011 U.S. Dist. LEXIS 129852
    2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) .................................................... 10

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
    655 F.3d 1039 (9th Cir. 2011) ........................................................................ 13

*Yumul v. Smart Balance Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ........................................................... 14

STATUTES & RULES

Cal. Bus. & Prof. Code
    § 17200 ............................................................................................................. 6
    § 17204 ............................................................................................................. 6
    § 17535 ............................................................................................................. 6

# TABLE OF AUTHORITIES

**Page(s)**

**STATUTES & RULES (CONT'D)**

Cal. Civ. Code
    § 1761(a) ................................................................................................................. 9
    § 1761(b) ............................................................................................................... 10
    § 1770(a) .......................................................................................................... 9, 10
    § 1770(a)(5) ........................................................................................................... 20
    § 1770(a)(7) ........................................................................................................... 20
    § 1770(a)(9) ........................................................................................................... 20
    § 1770(a)(16) ......................................................................................................... 20
    § 1780(a) ................................................................................................................. 6
    § 1782(a) ............................................................................................................... 19

15 U.S.C.
    § 45(n) ................................................................................................................... 17

Fed. R. Civ. P.
    Rule 9(b) ........................................................................................................... 6, 14
    Rule 12(b)(6) ........................................................................................................... 1

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on September 24, 2012, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Edward J. Davila, United States District Judge, Northern District of California, located at the Robert F. Peckham Federal Building, 280 South First Street, San Jose, California 95113, defendant Netflix, Inc. ("Netflix") will, and hereby does, move to dismiss with prejudice each and every cause of action asserted in the Third Amended Complaint ("TAC") of plaintiff Donald Cullen ("Cullen") pursuant to Federal Rule of Civil Procedure 12(b)(6) because the TAC fails to state a claim upon which relief can be granted. Each of the TAC's five causes of action, all of which raise claims for alleged consumer protection statute violations, fails for the following reasons:

The ***Unfair Competition Law*** ("UCL") claims (First through Third Causes of Action, for "unfair," "fraudulent," and "unlawful" practices, respectively) all fail because (1) Cullen lacks statutory standing under the UCL by failing to allege Netflix caused any injury, and (2) the TAC fails to allege facts showing Netflix committed an unfair, fraudulent, or unlawful business practice.

The ***False Advertising Law*** ("FAL") claim (Fourth Cause of Action) fails because (1) Cullen lacks statutory standing under the FAL by failing to allege Netflix caused any injury, and (2) the TAC fails to allege facts showing Netflix made a false or misleading statement likely to deceive the public.

The ***Consumer Legal Remedies Act*** ("CLRA") claim (Fifth Cause of Action) fails because (1) Cullen lacks standing under the CLRA by failing to allege Netflix caused any injury, (2) Cullen lacks standing because his claims do not involve a "tangible" good or service, (3) the TAC fails to allege facts showing Netflix made a false or misleading statement likely to deceive the public, and (4) Cullen failed to identify some of the bases of his CLRA claims in the mandatory 30-day pre-filing letter.

This Motion is based on this Notice of Motion and Motion, Netflix's Statement of Issues, Netflix's supporting Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, and the records in this Action.

**STATEMENT OF ISSUES**

1.      Does a plaintiff who concedes he did not lose money or property "as a result of" a defendant's conduct, but rather by his own decisions not to stop purchasing a subscription, lack standing to assert claims under the UCL, FAL, and CLRA? (Yes.  *See* Part III.A, *infra*.)

2.      Does providing Internet-based streaming video providing fail to qualify as a "tangible" good or service under the CLRA and fail to state a claim under it?  (Yes.  *See* Part III.B, *infra*.)

3.      Do UCL, FAL, or CLRA causes of action premised on alleged misrepresentations — whose truth the complaint concedes, and which are not likely to deceive reasonable members of the public — fail to state claims?  (Yes.  *See* Part IV.A, *infra*.)

4.      Does a UCL cause of action for "unfair" conduct premised on the defendant's imposition of a higher price — where the consumer elects a more expensive plan and declines to use a competitor's equivalent offerings — fail to state a claim?  (Yes.  *See* Part IV.B, *infra*.)

5.      Does a UCL cause of action for "unfair" conduct and CLRA violations premised on conclusory allegations about a lack of "adequate support tools" — which allegations were not disclosed in the mandatory CLRA pre-litigation letter — fail to state a claim? (Yes.  *See* Part IV.C, *infra*.)

6.      Do allegations premised on violation of statutes that do not prohibit the alleged conduct fail to state a claim for "unlawful" conduct under the UCL?  (Yes.  *See* Part IV.D, *infra*.)

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.   INTRODUCTION AND SUMMARY OF ALLEGATIONS.

3

The Third Amended Complaint, like his Second Amended Complaint and the two

4

iterations before it, reflects plaintiff Donald Cullen's discontent with Netflix's closed captioning

5

of its streaming video content.   As Cullen's facts continue to concede, however, Netflix —

6

having gradually raised its captioning rate several times over, and increased the percentage of

7

streaming hours with captions from 30% to 80% in less than a year — has set the gold standard

8

for deaf and hard-of-hearing individuals' accessibility to streaming video content, not set the

9

stage for a viable lawsuit.   The Court recognized this when it dismissed in full Cullen's Second

10

Amended Complaint.  *See generally Cullen v. Netflix, Inc.*, __ F. Supp. 2d __, 2012 U.S. Dist.

11

LEXIS 97884, 2012 WL 2906245 (N.D. Cal. July 13, 2012).

12

In his most recent iteration of his complaint, Cullen has abandoned outright his

13

discrimination claims, changed his remaining allegations only slightly, and now relies entirely on

14

the notion that Netflix's measures of captioning, its pricing, and its captioning search features

15

violate consumer protection statutes, including the UCL, TAC ¶¶ 69–71 (1st COA, "unfair"

16

prong), ¶¶ 72–74 (2d COA, "fraudulent" prong), ¶¶ 75–77 (3d COA, "unlawful" prong); FAL, *id.*

17

¶¶ 78–81 (4th COA); and CLRA, *id.* ¶¶ 82–89 (5th COA.)  Those allegations, which amount to

18

Cullen's fourth bite at the apple, again fail to support a theory of liability and should be dismissed

19

— this time, with prejudice.

20

As an initial matter, Cullen lacks standing.  All five causes of action fail because he did

21

not lose money or property (*i.e.*, his Netflix subscription fee) "as a result of" Netflix's

22

wrongdoing.  In fact, Cullen continues to subscribe *regardless* of, not because of, Netflix's

23

alleged conduct.  Although the Court did not address these issues in its prior order dismissing

24

Cullen's claims, the Ninth Circuit (in a published decision issued the same day as the Court's

25

order) underscored that lack of injury such as that present in Cullen's complaint compels

26

dismissal.  *See Sateriale v. R.J. Reynolds Tobacco Co.*, __ F.3d__, 2012 U.S. App. LEXIS

27

14394, at *34–35, 2012 WL 2870120, at *11 (9th Cir. July 13, 2012).  Cullen's CLRA claim

28

1  fails for the additional reason that the TAC concerns software, not a "tangible" good or service,

2  and therefore fails as a matter of law.

3        Even *if* Cullen had standing, his three factual theories fail to state cognizable claims.

4        ***First***, Cullen repeats his allegation that Netflix violated the UCL's "fraudulent" prong, the

5  FAL, and CLRA when Netflix stated that the proportion of captioned content in Netflix's

6  streaming library "'represent[ed]about 30% of viewing. . . . [M]ore subtitles are being added

7  every week, and we expect to get to 80% viewing coverage by the end of 2011.'"  (TAC ¶ 16,

8  quoting Ex. A, Netflix Blog, dated Feb. 24, 2011.)  Cullen does not, however, state any facts to

9  "contradict" these plainly "usage-based" measures — facts the Court required Cullen to plead as

10  a threshold to stating a cause of action.  *Cullen*, 2012 U.S. Dist. LEXIS 97884, at *22–23, 2012

11  WL 2906242, at *8.  Nor does Cullen allege Netflix's statement is likely to deceive any member

12  of the public — notwithstanding his misplaced reliance on a third party's blog post ranting about

13  Netflix's captioning rates (TAC ¶¶ 25–27), and a speculative and irrelevant "hyperbolic

14  hypothetical" — in Cullen's words — contrived in his complaint about the meaning of "viewing

15  coverage" (*id.* ¶¶ 28–29).

16        ***Second***, Cullen again complains that changes in subscription and pricing plans violate the

17  UCL's "unfair" prong because Cullen claims he can access sufficiently captioned materials only

18  by purchasing a more expensive DVD-only set (thereby imposing a "veritable 'deaf tax'").  (TAC

19  ¶¶ 35–50.)  The notion that Netflix's pricing practices are "unfair" fails under the three tests for

20  such a claim:  (a) Netflix's pricing does not violate any other underlying statutory violation; (b) it

21  is not "immoral" or "unscrupulous" because Netflix fully disclosed those prices, and they serve

22  several legitimate business purposes (as Cullen repeatedly concedes in his TAC and attachments);

23  and (c) Cullen concedes that he could have avoided paying more by purchasing cheaper

24  subscriptions or moving to a competing video programming provider, but he elected not to do so.

25        ***Third***, Cullen throws in a new theory into the TAC that Netflix does not provide

26  unspecified "adequate support tools" (TAC ¶¶ 32–34), allegedly in violation of the UCL "unfair"

27  prong and CLRA.  This theory does not support a claim under the "unfair" prong for the same

28  reasons that his "deaf tax" theory fails.  The theory also cannot support a CLRA claim because (a)

1   his mandatory 30-day notice letter makes no mention of inadequate tools — reason enough to

2   dismiss the claim with prejudice — and (b) the CLRA statutory violations raised in the complaint

3   concern misrepresentation, not lack of search tools.

4       **Fourth**, his catch-all claim under the "unlawful" prong of the UCL fails because Netflix

5   did not violate any law.

6       Because Cullen has now shown that he cannot cure the defects of his claims in this Third

7   Amended Complaint, Netflix respectfully requests the action be dismissed with prejudice.

8       **II.     LEGAL STANDARDS.**

9       To defeat a motion to dismiss, "a complaint must contain sufficient factual matter to state

10  a facially plausible claim for relief." *Krainski v. State ex rel. Bd. of Regents*, 616 F.3d 963, 972

11  (9th Cir. 2010), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 1949 (2009).

12  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

13  dismiss." *Doe v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009).  Where, as here, a

14  plaintiff alleges a "unified course of fraudulent conduct," the complaint must satisfy Rule 9(b)'s

15  particularity requirement and must allege facts demonstrating "who, what, when, where, and

16  how" of the misconduct, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009) —

17  even if fraud is not an element of any cause of action, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

18  1097, 1103–04 (9th Cir. 2003) (applying Rule 9(b) to UCL and CLRA claims).

19      **III.    CULLEN LACKS STATUTORY STANDING.**

20          **A.    Cullen Did Not Lose Money or Property "As a Result of" Netflix's
               Actions (UCL, FAL, CLRA Causes of Action).**

21

22      As an initial matter, all of Cullen's claims fail because Cullen lacks standing to assert

23  them.  The FAL, UCL, and CLRA do not provide a private right of action for Cullen unless he

24  lost money or property "as a result of" Netflix's alleged misconduct — that is, he must allege that

25  Netflix's alleged wrongdoing *caused* whatever damage Cullen claims he suffered.  Cal. Bus. &

26  Prof. Code §§ 17200 & 17204 (requiring injury "*as a result of* a violation of" the UCL); *id.*

27  § 17535 (requiring injury "*as a result of* a violation of" the FAL); Cal. Civ. Code § 1780(a)

28  (requiring "damage *as a result of* CLRA violation); *see Hall v. Time Inc.*, 70 Cal. Rptr. 3d 466,

1   472, 158 Cal. App. 4th 847, 855 (Cal. Ct. App. 2008) ("The phrase 'as a result of' in its plain and

2   ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on

3   the alleged misrepresentation.").

4        To plead causation properly, Cullen must allege particular facts showing (1) he was

5   actually "deceived" by representations about Netflix's subscription service, and (2) "would not

6   have purchased it otherwise" but for the representations.  *Kwikset v. Super. Ct.*, 246 P.3d 877,

7   881, 51 Cal. 4th 310, 317 (Cal. 2011); *Vess*, 317 F.3d at 1103, 1106, 1108  (affirming dismissal of

8   UCL and CLRA claims "grounded in fraud" for failure to plead "the who, what, when, where,

9   and how of the misconduct charged," "what is false or misleading about a statement," and "why it

10  is false") (citations omitted); *Kearns*, 567 F.3d at 1124 (same; "party alleging fraud must set forth

11  *more* than the neutral facts necessary to identify the transaction.") (original emphasis); *Woods v.*

12  *Google Inc.*, No. 05:11–cv–1263, 2011 U.S. Dist. LEXIS 88795, at *27, 2011 WL 3501403, at *9

13  (N.D. Cal. Aug. 10, 2011) (dismissing UCL and FAL claims based on "complaint's lack of

14  particularity with respect to the statements that were alleged to have induced his reliance").

15       As the Ninth Circuit recently explained, where a plaintiff's UCL claim "sounds in fraud,

16  they are required to prove *actual reliance* on the allegedly deceptive or misleading statements, . . .

17  and that the misrepresentation was an *immediate cause* of their injury-producing conduct."

18  *Sateriale*, 2012 U.S. App. LEXIS 14394, at *34–35, 2012 WL 2870120, at *10 (affirming

19  dismissal of UCL claims for lack of injury) (citations and quotations omitted; emphasis added).

20  Likewise, "consumers seeking to recover damages under the CLRA based on a fraud theory must

21  prove *actual reliance* on the misrepresentation and *harm*."  *Id.* [LEXIS] at *35, [WL] at *11

22  (citations and quotations omitted; emphasis added).

23       Here, Cullen appears to allege Netflix's actions caused him, a Netflix subscriber, to lose

24  money in two ways:  (1) by making the *initial* Netflix purchase, and (2) by making *subsequent*

25  monthly subscription purchases.  In both cases, not only are Cullen's allegations insufficiently

26  conclusory; his few actual factual allegations affirmatively show that, in fact, he did not and could

27  not rely on Netflix's statements when he paid for his subscription.

28

1          ***1.          The Alleged Conduct Did Not Cause Cullen's Initial Subscription.*** Cullen's

2   factual averments make clear that Cullen's *initial purchase* of a subscription was not caused by

3   any alleged misrepresentation.  Indeed, Cullen admits he first purchased a subscription in *May*

4   *2009* (TAC ¶ 53) — more than two years before the only alleged misrepresentation now at issue

5   in a February 2011 blog post (TAC ¶ 54).  Alleged harms taking place *after* the supposed harm

6   cannot, as a matter of law (and common sense) support a theory of causation.  *See Hall*, 70 Cal.

7   Rptr. 2d at 473, 158 Cal. App. 4th at 857 (dismissing UCL claim; no standing where allegedly

8   wrongful conduct occurred "after" injury and therefore "did not cause" it); *see also Caro v.*

9   *Procter & Gamble Co.*, 22 Cal. Rptr. 2d 419, 433, 18 Cal. App. 4th 644, 668 (Cal. Ct. App. 1993)

10  (finding alleged misrepresentation that orange juice was "fresh" did not cause damage because

11  plaintiff "did not believe defendants' product to be 'fresh.'").

12          ***2.          The Alleged Conduct Did Not Cause Cullen's Subsequent Subscriptions.*** The

13  allegations also confirm that Netflix's statements did not cause Cullen to make any *subsequent*

14  subscription payments.  Cullen premises his claims on the notion that Netflix's various statements

15  misled Cullen to believe that it was or would be providing "meaningful captioning" to Cullen.

16  (TAC ¶ 55 [Cullen "would have only been willing to pay less, if anything at all," for his Netflix

17  subscription had he known Netflix did not provide "meaningful" closed captioning].)  Cullen

18  betrays his own claims, however, by conceding that he was aware of a "lack of meaningful

19  captioning" *as early as June 2009, yet continued purchasing the subscription*.  (*Id.* ¶ 53 ("At

20  various times after subscribing in May 2009, Plaintiff considered terminating his

21  subscription . . . because of its lack of meaningful captioning.").  Now, Cullen still has the

22  subscription, nothing has changed, and he continues making payments.  Thus, because Cullen

23  continues to subscribe, he cannot allege that he *would not have paid the subscription* "*otherwise*."

24  *Compare Kwikset*, 246 P.3d at 881, 51 Cal. 4th at 317 (no standing unless plaintiff "would *not*

25  have purchased it otherwise.") (emphasis added); *Sateriale*, 2012 U.S. App. LEXIS 14394, at

26  *32–33, 2012 WL 2870120, at *10 (no standing where alleged harm "could not have caused the

27  plaintiffs' loss").

28

1    Where, as here, a plaintiff claims a false or misleading representation caused the purchase

2    of a product — but the complaint reveals he did not believe the statement — a plaintiff lacks

3    standing because his loss of money was not caused by the defendant, but by plaintiff's own non-

4    actionable decision to purchase the product. *Laster v. T-Mobile USA, Inc.*, No. 05-cv-1167, 2009

5    U.S. Dist. LEXIS 116228, at *10, 2009 WL 4842801, at *4 (S.D. Cal. Dec. 14, 2009) ("plaintiff

6    who knows defendant's claims are false but nonetheless proceeds has not relied on the truth of

7    defendant's misrepresentations"); *see Caro*, 22 Cal. Rptr. 2d at 433, 18 Cal. App. 4th at 668

8    (alleged misrepresentation did not cause damage because plaintiff "did not believe" it); *see also*

9    *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 518 (7th Cir. 2010) ("self-inflicted injur[y]

10   break[s] the causal chain linking the defendant's conduct to the asserted injury"); *B'hood of*

11   *Locomotive Eng's & Trainmen v. Surface Transportation Bd.*, 457 F.3d 24, 28 (D.C. Cir. 2006)

12   ("This injury was not in any meaningful way 'caused' by the [defendant]; rather, it was entirely

13   self-inflicted and therefore insufficient to confer standing upon the [plaintiff]."). Here, Cullen

14   lacks standing because he did not purchase a Netflix subscription "as a result of" Netflix's

15   representations.

16   Framed in terms of pleading, Cullen fails to raise the prospect of an injury caused by

17   Netflix "above the speculative level," fails to allege causation under the UCL, FAL, and CLRA,

18   and thereby fails to state a claim. *Bell Atl. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Hoffman v.*

19   *Cingular Wireless, LLC*, No. 06-cv-1021, 2008 U.S. Dist. LEXIS 67573, at *11–12, 2008 WL

20   4093722, at *4 (S.D. Cal. Sept. 4, 2008) (dismissing UCL and CLRA claim; allegation that

21   defendant's conduct "would [] have" caused injury fails to state claim), *aff'd sub nom. Market*

22   *Trading v. AT&T Mobility, LLC*, 388 Fed. Appx. 707 (9th Cir. 2010).

23          **B.    Netflix's Streaming Videos Do Not Constitute a "Tangible" Good or
                    Service (CLRA Cause of Action).**
24

25   Cullen's CLRA claim fails for the additional reason that Netflix's Internet-based

26   streaming video library does not involve a "good[]" or "service[]" — an indispensable

27   requirement of his CLRA claims. Cal. Civ. Code § 1770(a). Netflix's streaming movies and TV

28   episodes — like insurance, annuities, and credit — are not "tangible chattel[s]," *id.* § 1761(a)

1  (defining "goods"); nor are they "work, labor, [or] services for other than a commercial or

2  business use," *id.* § 1761(b) (services).

3        Indeed, a growing line of decisions from the Northern District of California has recently

4  dismissed similar claims involving online materials because "software, like insurance and credit,

5  is an intangible chattel under California law and is therefore not encompassed in the CLRA's

6  definition of 'good,'" and "generally is not a service for purposes of the CLRA." *Ferrington v.*

7  *McAfee, Inc.*, No. 10-cv-01455, 2010 U.S. Dist. LEXIS 106600, at *53, 57, 2010 WL 3910159, at

8  *18, 19 (N.D. Cal. Oct. 5, 2010); *see In re iPhone Application Litig.*, No. 11-md-02250, 2011

9  U.S. Dist. LEXIS 106865, at *32–33, 2011 WL 4403963, at *10 (N.D. Cal. Sept. 20, 2011)

10  (dismissing CLRA claim; smartphone "Apps" not "service"); *Wofford v. Apple Inc.*, No. 11–CV–

11  0034, 2011 U.S. Dist. LEXIS 129852, *6–7, 2011 WL 5445054, at *2 (S.D. Cal. Nov. 9, 2011)

12  (same; software upgrade not "service"); *see also Goodman v. HTC Am., Inc.*, No. C-11-1793,

13  2012 U.S. Dist. LEXIS 88496, at *32, 2012 WL 2412070, at *13 (W.D. Wash. June 26, 2012)

14  (same; "the CLRA applies only to 'goods or services,'" not software).

15        Those decisions are consistent with the California Supreme Court's holding that

16  "electromagnetic transmissions" (such as Netflix's streaming media) are "*in*tangible." *Intel Corp.*

17  *v. Hamidi*, 71 P.3d 296, 309, 30 Cal. 4th 1342, 1361 (Cal. 2003) (emphasis added); *accord*

18  *Fairbanks v. Super. Ct.*, 205 P.3d 201, 203, 46 Cal. 4th 56, 61 (Cal. 2009) ("Because life

19  insurance is not a 'tangible chattel,' it is not a 'good' as that term is defined in the [CLRA].");

20  *Berry v. American Express Publ'g, Inc.*, 54 Cal. Rptr. 3d 91, 92, 147 Cal. App. 4th 224, 227 (Cal.

21  Ct. App. 2007) (dismissing CLRA claim; "the extension of credit, such as issuing a credit card,

22  . . . does not fall within the scope of the [CLRA]."); *see also Ward Gen'l Ins. Services, Inc. v.*

23  *Employers Fire Ins. Co.*, 7 Cal. Rptr. 3d 844, 850, 114 Cal. App. 4th 548, 556 (Cal. Ct. App.

24  2003) (computer database not "tangible" in "ordinary and popular sense").

25        The CLRA claim fails for lack of a "tangible" good or service.

26      **IV.    EVEN IF CULLEN HAD STANDING, HE FAILS TO STATE A CLAIM.**

27        Even if Cullen had standing, the three poorly pleaded factual theories on which his causes

28  of action for violations of the UCL, FAL, and CLRA rest — (1) that Netflix misrepresented the

1    percentage of total streaming viewing coverage with captions, (2) that Netflix's fully disclosed

2    pricing structure imposes "a veritable 'deaf tax,'" and (3) that Netflix provides "inadequate" tools

3    — do not support a claim.  These claims should be dismissed with prejudice.

4         **A.    Cullen Again Fails to Allege Facts Showing Netflix**
             **Made Actionable Misrepresentations (Alleged Under**
5            **UCL "Unfair" or "Fraudulent" Prongs, FAL, and CLRA).**

6         Cullen's claim of misrepresentation fails.  Having abandoned all but one of the five

7    misrepresentations he previously pleaded, Cullen now bases his misrepresentation theory on

8    Netflix's single alleged statement that, as of February 2011, "more than 3,500 TV episodes and

9    movies have subtitles available, representing about 30% of *viewing*," and that Netflix "expect[s]

10   to get to 80% *viewing coverage* by the end of 2011."  (TAC ¶¶ 16 & Ex. A [Netflix Blog, dated

11   Feb. 24, 2011] at 1, emphasis added.)  He contends this statement was misleading in violation of

12   the UCL's "unfair" and "fraudulent" prongs, the FAL, and the CLRA.

13        The UCL, FAL, and CLRA require, however, that Cullen specifically plead how a

14   misrepresentation was misleading based on the objective "reasonable consumer" standard.

15   *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (affirming dismissal of UCL, FAL, and

16   CLRA claims because statements promising sweepstakes payout in exchange for purchasing

17   magazine subscription are unlikely to deceive a "person of ordinary intelligence").  Under the

18   reasonable consumer standard, a plaintiff must show that members of the public would "likely"

19   be deceived by the statement.  *Id.*  Cullen again cannot satisfy this standard.

20        True statements are not misrepresentations as a matter of law, and as the Court previously

21   explained in rejecting this claim before, Cullen failed to state (as he must) any allegation that

22   would "contradict Netflix's claim that the captioned titles represent 30% of viewing, a usage-

23   based number, or that Netflix expected to reach 80% viewing coverage by the end of 2011."

24   *Cullen*, 2012 U.S. Dist. LEXIS 97884, at *22–23, 2012 WL 2906245, at *8.  Stated simply,

25   Cullen did not allege facts showing that (1) Netflix did not caption "30% of viewing," a usage-

26   based measure, or (2) Netflix did not "reach 80% viewing coverage" by the end of 2011.  Because

27   Cullen allege facts showing these statements are not true, the representations cannot support a

28   UCL, FAL, or CLRA violation.  *See Consumer Advocates v. Echostar Satellite Corp.*, 8 Cal.

1   Rptr. 3d 22, 29, 113 Cal. App. 4th 1351, 1360 (Cal. Ct. App. 2003) ("Defendants did not violate

2   any of the [UCL, FAL, and CLRA] statutes with this representation, because it is true."); *Davis v.*

3   *Ford Motor Credit Co. LLC*, 179 Cal. App. 4th 581, 599, 101 Cal. Rptr. 3d 697, 711 (Cal. Ct.

4   App. 2009) (dismissing CLRA action because representation was true: "what Ford represented to

5   Davis was correct, not a misrepresentation").

6          Notwithstanding the statements' truth, Cullen appears to suggest that the comments about

7   "30% of viewing" (in February 2011) and "80% of viewing coverage" (by the end of 2011) are

8   deceptive because, according Cullen's idiosyncratic reading, Netflix seemed to "refer to the

9   percent of its streaming video library that would be captioned." (TAC ¶¶ 16, 21.)  But in unfair

10  competition and false advertising cases, "'[t]he phrase "likely to deceive" implies more than a

11  mere possibility that the advertisement might conceivably be misunderstood by some few

12  consumers viewing it in an unreasonable manner.  Rather, the phrase indicates that the ad is such

13  that it is *probable that a significant portion of the general consuming public* or of targeted

14  consumers, acting reasonably in the circumstances could be misled.'"  *Castagnola v. Hewlett-*

15  *Packard Co.*, No. C-11-05772, 2012 U.S. Dist. LEXIS 82026, at *18–19, 2012 WL 2159385, at

16  *6 (N.D. Cal. June 13, 2012) (granting motion to dismiss UCL and FAL claims because

17  "dismissal of such claims is appropriate where the plaintiff fails to show the likelihood that a

18  reasonable consumer would be deceived"; listing numerous cases granting motions to dismiss;

19  and quoting *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495, 105 Cal. App. 4th 496,

20  508 (Cal. Ct. App. 2003) (emphasis added)).

21         Here, Cullen relies on two groups of speculative allegations purporting to show likelihood

22  of deception, but neither establishes "that it is probable that a significant portion of the general

23  consuming public . . . , acting reasonably in the circumstances could be misled."

24         ***Third-Party Rant on Netflix Blog.***  Cullen quotes at length from one third party's rant on

25  a Netflix blog that Netflix's captioning is insufficient (apparently an alternative method of

26  calculating captioned content).  (TAC ¶¶ 25–27.)  That posting is irrelevant.  ***First***, whatever

27  captioning methodology that blogger uses, it says nothing about the usage-based "viewing" and

28  "viewing coverage" measures Netflix *actually* discusses.  Indeed, the blog post states only that

1   "the count is only 51.73% *of titles* with added captions," not usage-based "viewing."  (TAC ¶ 25.)

2   ***Second***, a single individual's opinions on Netflix's captioning methods certainly says nothing

3   about whether it is "probable that a significant portion of the general consuming public" would

4   misinterpret Netflix's statements — particularly given that of the 22 comments attached to

5   Cullen's complaint (TAC Ex. B), only *one* takes Cullen's perspective.  The opinion of one-in 22

6   people does not make it "probable that a significant portion of the general consuming public . . . ,

7   acting reasonably in the circumstances could be misled."  In any event, Netflix's Neil Hunt

8   expressly responds that "[Netflix's] specific language is precise and correct:  'more than 80% of

9   the hours streamed in the US were of content with captions or subtitles available.'"  The blog

10  posting of one individual's misguided thoughts (amid 21 other postings that do not share that

11  opinion) says nothing of whether a majority of reasonable people would have that same view.

12          ***Cullen's "Hyperbolic Hypothetical" re Captioning.***   In the alternative, Cullen conjures

13  what he calls a "hyperbolic hypothetical" asking the Court to speculate (or "imagine," in Cullen's

14  words) a world in which Cullen has "only a single viewing option (the action flick)." (TAC ¶ 28–

15  29.)  In this alternative universe, Cullen calculates a hypothetical captioning percentage of 18.2%,

16  and makes the leaping conclusion that Netflix's reality-based "usage-based" calculations of 30%

17  and 80% are somehow misleading or false.  But Cullen's imaginary scenario cannot support a

18  pleading as a general matter, let alone provide a basis for alleging that it is "probable that

19  significant portion of the general consuming public" would see the world through Cullen's eyes.

20  *See WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1047 (9th Cir.

21  2011) ("factual allegations [in the complaint] must be enough to raise a right to relief above the

22  speculative level"); *Stack v. Lobo*, 903 F. Supp. 1361, 1369 (N.D. Cal. 1995) ("Pure speculation

23  such as this does not enable Plaintiffs to survive a motion to dismiss and entitle them to conduct

24  discovery on their claims.").  Far from having grounding in fact, Cullen's conclusory allegations

25  underscore that he has no legal or factual basis for his claims.[1]

26  ───────────────────

27          [1] Cullen ends with a conclusory allegation that "Netflix did not have 30% of its streaming
    video library captioned," and "Netflix did not have 80% of its streaming video library captioned."
    (TAC ¶ 31.)  Even if grounded in factual allegations (they are not), these conclusory statements

28                                                                                (Footnote continues on next page.)

1    Even if these statements could hypothetically deceive a reasonable person in the abstract,

2    his pleading remains inadequate under Rule 9(b), for he fails to allege the "who, what, when,

3    where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106 (citations omitted); *Kaplan*

4    *v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) (claims based in fraud "must state precisely the time,

5    place, and nature of the misleading statements, misrepresentations, and specific acts of fraud.").

6    Cullen makes no allegations regarding, for example, *when* he viewed the alleged

7    misrepresentations, *what* subscriptions he allegedly purchased in reliance on the representations,

8    or *what* video programming he viewed that did not contain captions.  Such threadbare allegations

9    do not support a claim under Rule 9(b) and warrant dismissal.  *See, e.g.*, *Yumul v. Smart Balance*

10   *Inc.*, 733 F. Supp. 2d 1117, 1122-24 (C.D. Cal. 2010) (dismissing plaintiff's claims for failing to

11   allege specific information about her purchases of the product in question); *Edmunson v. P&G*,

12   No. 10-cv-2256, 2011 U.S. Dist. LEXIS 53221, at *17, 2011 WL 1897625, at *5 (S.D. Cal. May

13   17, 2011) (dismissing UCL and CLRA claims where, as here, "[t]he complaint contains general

14   allegations about Defendant's products and advertising scheme, but almost no allegations specific

15   to Plaintiff.").

16   Cullen's misrepresentation theory does not support a cognizable claim.

17   **B.    Cullen's So-Called "Deaf-Tax" Theory Again Fails to State a Claim**
     **(Alleged Under "Unfair" Prong of UCL).**
18

19   For his next theory, Cullen reasserts his position that Netflix imposes a "veritable 'deaf

20   tax'" on Cullen because he pays "a premium of $11.99 per month over hearing members" for

21   equivalent video programming, a supposed violation of the UCL's "unfair" prong.  (TAC ¶¶ 35–

22   50.)  Cullen bases this "deaf tax" theory entirely on his choice to purchase 2-DVD-at-a-time and

23   streaming subscription for exactly the same price — $19.98 — that every other Netflix subscriber

24   pays for exactly the same menu of options.  (*Id.* ¶¶ 43–44.)  Thus, Cullen makes the conclusory

25   _____

26   (Footnote continued from previous page.)

27   "do not contradict" the actual representations that are at issue:  whether "30%" or "80% of
     viewing coverage" was captioned.

28

1    and contradictory leap that Netflix imposes a *forced* "premium" on deaf and hard-of-hearing

2    subscribers even though his actual factual allegations show Netflix's pricing "permits a member

3    to *choose*" among a variety of menu options.  (TAC ¶ 44, emphasis added.)  Regardless of its

4    internal inconsistencies, Cullen's "deaf tax" theory does satisfy any cognizable test for "unfair"

5    conduct under the UCL.

6         As one court in this District recently explained, "[t]here is disagreement among California

7    courts regarding the definition of 'unfair' business practices in consumer cases such as this. . . .

8    [T]here is a split of authority that has resulted in three different tests."  *Villegas v. Wells Fargo*

9    *Bank, N.A.*, No, C-12-02004, 2012 U.S. Dist. LEXIS 99951, at *22–24, 2012 WL 2931343, at *7

10   (N.D. Cal. July 17, 2012) (granting motion to dismiss UCL "unfair" claims); *see Drum v. San*

11   *Fernando Valley Bar Assn.*, 106 Cal. Rptr. 3d 46, 53, 182 Cal. App. 4th 247, 256 (Cal. Ct. App.

12   2010) ("In consumer cases, the Supreme Court has not established a definitive test to determine

13   whether a business practice is unfair."); *Bardin v. DaimlerChrysler Corp.*, 39 Cal. Rptr. 3d 634,

14   639–647, 136 Cal. App. 4th 1255, 1264–1274 (Cal. Ct. App. 2006) (analyzing tests and

15   dismissing claims).  Cullen's theory fails under all three tests.

16              **1.    Cullen does not "tether" this theory to a "constitutional,**
                        **statutory, or regulatory provision" (First Test).**

17   The first test holds that "that the public policy which is a predicate to a consumer unfair

18   competition action under the 'unfair' prong of the UCL must be tethered to specific

19   constitutional, statutory, or regulatory provisions."  *Villegas*, 2012 U.S. Dist. LEXIS 99951, at

20   *22–24 (quoting *Drum*, 106 Cal. Rptr. 3d at 53, 182 Cal. App. 4th at 256 (listing cases)).

21   Here, Cullen does not "tether" this theory to any other constitutional, statutory, or

22   regulatory provision.  Indeed, the Court dismissed (and Cullen has since abandoned) the only

23   other conceivable legal provisions supporting a claim:  the anti-discrimination claims no longer at

24   issue.  Cullen's "deaf tax" theory thus fails this first test.

25

26

27

28

2.     **Cullen does not allege facts showing "immoral" or "unscrupulous" conduct whose utility is outweighed by any harm (Second Test).**

Cullen's theory also fails the second test:  whether the plaintiff alleges facts showing the conduct "'is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers[, which] requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'"  *Villegas*, 2012 U.S. Dist. LEXIS 99951, at *22–24, 2012 WL 2931343, at *7 (quoting *Drum*, 106 Cal. Rptr. 3d at 53, 182 Cal. App. 4th at 257). Cullen flunks this test for several reasons.

*First*, Netflix's pricing is not "immoral, unethical, oppressive or substantially injurious" because — as Cullen repeatedly asserts — Netflix fully disclosed those prices on its blog post, its website, and other public areas.  *See, e.g.*, *Wayne v. Staples, Inc.*, 37 Cal. Rptr. 3d 544, 558, 135 Cal. App. 4th 466, 484 (Cal. Ct. App. 2006) ("In light of Staples's clear disclosure of the actual price it would charge its customers for declared value coverage prior to any purchase, the trial court properly concluded any ambiguity in the order form as to whether the amount charged includes a 'surcharge' or profit for Staples was not misleading or deceptive."); *Searle v. Wyndham Internat., Inc.*, 126 Cal. Rptr. 3d 231, 236–37, 102 Cal. App. 4th 1327, 1334–1335 (Cal. Ct. App. 2002) (failure to disclose whether clearly stated 17 percent service charge on hotel room service was remitted to hotel employees not unfair or deceptive); *Plotkin v. Sajahtera, Inc.*, 131 Cal. Rptr. 3d 303, 312–13, 106 Cal. App. 4th 953, 965–966 (Cal. Ct. App. 2003) (unambiguous notice of valet parking charges on parking ticket given to customer sufficient to defeat claims for deceptive business practices as a matter of law, notwithstanding failure of parking operators to notify customers of charges in advance; "the public was not likely to be deceived"); *see also In re Late Fee & Over-limit Fee Litigation*, 528 F. Supp. 2d 953, 965-66 (N.D. Cal. 2007) (dismissing UCL claims; defendants "could not properly be deemed to have engaged in unfair or deceptive practices . . . with the express disclosures"); *Evans v. Chase Manhattan Bank USA, N.A.*, No. C-05-3968, 2006 U.S. Dist. LEXIS 5259, at *19, 2006 WL 213740, at *6 (N.D. Cal. Jan. 27, 2006) (actions consistent with the "fully-disclosed terms of the contract . . . cannot plausibly be labeled a deception").

*Second*, Cullen makes no factual allegations showing that the gravity of any alleged harm outweighs the potential benefits — the same reason the Court dismissed this claim in the previous complaint.  *See Cullen*, 2012 U.S. Dist. LEXIS 97884, at \*26, 2012 WL 2906245, at \*9 ("Cullen has not alleged facts about any potential utility of charging a higher subscription fee for the more accessible DVD-by-mail plan than for the streaming-only plan price. Thus, Cullen has not stated a plausible claim that the gravity of the harm outweighs the utility of the conduct.").[2]

Cullen makes, rather, a number of concessions that the "premium charged for Netflix's DVD-by-mail plan *has* some potential utility."  (TAC ¶ 46, emphasis added.)  He concedes, for example, that Netflix's pricing structure "cover[s] the additional cost of shipping DVDs rather than streaming video content."  (*Id.*)  Documents attached to and incorporated in Cullen's pleading (the contents of which Cullen does not challenge) announce a variety of additional legitimate reasons for the price differential, including that "[t]he price increase will allow us to continue to offer the popular plan choice of unlimited TV episodes and movies streaming instantly along with unlimited DVDs" (TAC Ex. C); and "[c]reating an unlimited DVDs by mail plan (no streaming) at our lowest price ever, $7.99, does make sense and will ensure a long life for our DVDs by mail offering" (*id.* Ex. D).  After balancing Cullen's anemic and conclusory allegations of "harm" against Cullen's several concessions of substantial benefits, the TAC leaves no room for a cognizable allegation of "unfair" conduct under this test.

### 3.   Cullen concedes "countervailing benefits to consumers and competition" and that any injury "could . . . reasonably have been avoided" (Third Test).

Cullen's theory fares no better under the third test, which borrows from section 5 of the Federal Trade Commission Act (15 U.S.C. § 45(n)), and requires, among other things, that "'the injury must not be outweighed by any countervailing benefits to consumers or competition'"; and

---

[2]  Cullen asserts only the insufficient legal conclusion that "the gravity of Netflix's conduct in forcing upon the deaf and hard of hearing a 'deaf tax' premium in order to enjoy equal access to video material, outweighs the utility of charging the particular premiums it charges." (TAC ¶ 48.)

1   "'it must be an injury that consumers themselves could not reasonably have avoided.'" *Villegas*,

2   2012 U.S. Dist. LEXIS 99951, at \*22–24, 2012 WL 2931343, at \*7 (quoting *Drum*, 106 Cal.

3   Rptr. 3d at 53, 182 Cal. App. 4th at 257).  Cullen fails to show either requirement.

4       ***First***, as explained above, Cullen fails to show the alleged injury from Netflix's pricing

5   are outweighed by the many benefits Cullen concedes it confers.

6       ***Second***, Cullen could easily have avoided paying the "tax."  If he chose to stay with

7   Netflix, he could have elected a different plan from the menu of options that Cullen concedes

8   Netflix makes available to subscribers.  (*See* TAC ¶¶ 41–42.)  If he did not want to stay with

9   Netflix, he could have used a competing streaming video provider, such as Hulu.com (which he

10  previously asserted offers captioning on its own library of streaming content).  (*See* 2d Am.

11  Compl. ¶ 18 ["other steaming video content providers (such as Hulu.com and YouTube.com) had

12  captioned and were captioning substantial content, at a meaningful pace"].)[3]  Cullen's wide

13  variety of options nullifies his claims of "unfair" competition under this last test.  *See, e.g.*, *Davis*

14  *v. Ford Motor Credit Co. LLC*, 101 Cal. Rptr. 3d 697, 710, 179 Cal. App. 4th 581, 595 (Cal. Ct.

15  App. 2009) (dismissing claims under "unfair" prong where plaintiff's harm "reasonably could

16  have been avoided had [the plaintiff] made his monthly payments timely, or within the 10-day

17  grace period, in accordance with his obligations under the contract").

18      Cullen's "deaf tax" theory does not support a claim for relief.

19

20

21

22

23      [3] Although Cullen removed this factual allegation from the TAC, he remains bound by

24  facts stated in previous pleadings and is barred from making any argument or allegations that
    would contradict them.  *See, e.g.*, *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128,

25  1144-1145 (N.D. Cal. 2010) ("[w]here allegations in an amended complaint contradict those in a
    prior complaint, a district court need not accept the new alleged facts as true"; listing cases);

26  *Sumner Peck Ranch, Inc. v. Bureau of Reclamation*, 823 F. Supp. 715, 720 (E.D. Cal. 1993) ("the
    court may disregard allegations in the complaint if contradicted by facts established by exhibits

27  attached to the complaint.").

28

### C.   Cullen's New Theory for "Lack of Adequate Support Tools" Fails to State a Claim (Alleged Under UCL "Unfair" Prong and CLRA).

Cullen's new theory — that Netflix does not include unspecified "adequate support tools" — appears to have been brought as purported violations of the UCL's "unfair" prong and CLRA (though the complaint is not entirely clear about this).  (TAC ¶¶ 32–34.)  This theory fails to state a claim.

### 1.   This theory does not support a claim under the UCL's "unfair" prong.

The "adequate support tools" theory does not support an "unfairness"-based UCL claim for largely the same reasons his "deaf tax" theory fails.  *First*, he does not "tether" the claim to a viable constitutional, statutory, or regulatory violation.  *Second*, he makes only conclusory statements, not factual allegations, regarding the costs and benefits of the current search functions.  *Cf. Cullen*, 2012 U.S. Dist. LEXIS 97884, at *26, 2012 WL 2931343, at *9 ("Cullen has not stated a plausible claim that the gravity of the harm outweighs the utility of the conduct and thus that the [conduct] is immoral or unscrupulous.").  *Third*, he makes no allegations concerning potential alternatives, though he has previously conceded that alternatives Hulu.com and Youtube.com *do* contain search functions.  (*Compare* 2d Am. Compl. ¶ 18.)

Cullen does not, therefore, state a claim for "unfair" business practices based on the alleged lack of "adequate support tools."

### 2.   This theory does not support a CLRA claim.

The CLRA also does not provide a basis for liability for this new theory.  As a threshold matter, the CLRA requires the plaintiff to send a pre-filing notice letter 30 days before filing that "[n]otif[ies] the [party] alleged to have employed or committed methods, acts, or practices declared unlawful by [the CLRA] of the particular alleged violations of Section 1770 [of the CLRA]."  Cal. Civ. Code § 1782(a).  While it is true that Cullen sent a pre-filing letter to Netflix prior to filing suit (TAC ¶ 86), the letter notified Netflix of alleged harms arising from "Netflix's promises to subtitle a substantial portion of its library of streaming video within a reasonable period."  (Request for Judicial Notice ["RJN"], Ex. A [CLRA Pre-filing Notice Letter, dated

1    March 2, 2011].)  The letter made no mention of Cullen's new "lack of adequate support tools"

2    theory.  Such a misstep is fatal.

3           "Although it is not jurisdictional, compliance with the notice requirement 'is necessary to

4    state a claim.'" *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1089 (C.D. Cal. 2009)

5    (quoting *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007)); *see Laster*

6    *v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005) ("§ 1782 scrupulously

7    prohibits any action for damages unless its notice provisions are met.  As stated, the Legislative

8    goals would be eviscerated if consumers were allowed to sue for damages without first providing

9    the statutorily mandated period for remediation.").  For these reasons, "these procedural

10   requirements are strictly adhered to by dismissing a claim with prejudice."  *Davis*, 650 F. Supp.

11   2d at 1089.  Cullen's insufficient letter here, therefore, requires dismissal with prejudice.

12          Even if Cullen had satisfied his actual notice requirements, his allegations that Netflix did

13   not provide "adequate support tools" does not fall into any of the four statutory categories on

14   which Cullen bases his CLRA — all of which concern "representations" and "advertisements."

15   (*See* TAC ¶ 84, listing Cal. Civ. Code § 1770(a)(5) ["represent(ations) that goods have goods

16   characteristics, uses or benefits which they do not have"]; *id.* § 1770(a)(7) ["represent(ations) that

17   goods are of a particular standard, quality, or grade if they are of another"]; *id.* § 1770(a)(9)

18   ["advertis(ments of) goods with intent not to sell them as advertised"]; *id.* § 1770(a)(16)

19   ["represent(ations that) the subject of a transaction has been supplied in accordance with a

20   previous representation when it has not"].)  Cullen's complaints about Netflix's "support tools"

21   do not come within the purview of these provisions.

22          Cullen cannot state a cognizable claim for "lack of adequate support tools."

23                 **D.**     **Cullen Also Fails to State a Claim for Violation of the**
                              **UCL's "Unlawful" Prong.**
24

25          Cullen also bootstraps a claim for "unlawful" business practices under the UCL to his

26   other causes of action.  (TAC ¶¶ 75–77.)  Because Cullen's other claims fail, his UCL claim

27   premised on "unlawful" acts has no basis and must also fail.  *E.g.*, *Ingels v. Westwood One*

28   *Broad. Servs., Inc.*, 28 Cal. Rptr. 3d 933, 938, 129 Cal. App. 4th 1050, 1060 (Cal. Ct. App. 2005)

1  ("If the [underlying] claim is dismissed, then there is no unlawful act upon which to base the

2  derivative [UCL] claim." (citation and quotation omitted); *Pantoja v. Countrywide Home Loans,*

3  *Inc.*, 640 F. Supp. 2d 1177, 1190 (N.D. Cal. 2009) (dismissing UCL claim because court

4  dismissed "all . . . predicate violations").

5  **V.  CONCLUSION.**

6      Cullen's complaint continues to fail to state a claim.  This Court provided clear directions

7  to him on what was required to support his claims.  He failed to follow them.  At this point,

8  enough is enough and Netflix respectfully requests the Court dismiss the Third Amended

9  Complaint with prejudice.

10  Dated:    August 20, 2012    DAVID F. MCDOWELL
    JACOB M. HARPER

11      MORRISON & FOERSTER LLP

12      By:_____/s/ David F. McDowell_____

13      David F. McDowell
    Attorneys for Defendant

14      NETFLIX, INC.

1179919