UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONALD CULLEN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX, INC.,<br><br>Defendant. | Case No.: 5:11-CV-01199-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>**[Re: Docket No. 53]** |

Presently before the Court is Defendant Netflix Inc.'s ("Defendant" or "Netflix") Motion to Dismiss the Third Amended Complaint filed by Plaintiff Donald Cullen ("Plaintiff" or "Cullen"). See Docket Item No. 53. Having fully reviewed the parties' papers and heard oral arguments of counsel, the Court will grant Defendant's motion without leave to amend for the reasons described below.

**1   Background**

    **1.1   Factual Background**

Defendant is a provider of both on-demand streaming video programming over the Internet and flat-rate online DVD-Video and Blu-ray Disc rental-by-mail. Third Am. Compl. ¶ 6.

1

Case No.: 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

Customers subscribe to Netflix by paying a monthly fee, which differs based on options selected. Id. Netflix began providing online streaming video programming in or around January 2008. Id. ¶ 7.

Plaintiff Cullen, a deaf individual and resident of California, became a member of Netflix in May 2009. Id. ¶¶ 12, 51. Plaintiff initially subscribed to the "unlimited 3 DVD" plan but later "downgrad[ed] his subscription plan based on his viewing habits." Id. ¶ 51. At the time when he became a member, only a portion of Netflix's online streaming programming contained closed captioning subtitles. Id. ¶ 7.

On or around February 25, 2011, Netflix's Chief Product Officer Neil Hunt ("Hunt") posted a blog entry on Netflix's website (hereinafter the "Feb. 2011 Blog Post") stating that "more than 3,500 TV episodes and movies have subtitles available, representing about 30% of viewing." Id. ¶ 16 & Ex. A. Hunt also wrote in the blog post, "More subtitles are being added every week and we expect to get to 80% viewing coverage by the end of 2011 . . . ." Id. Plaintiff has alleged that at the time Hunt posted these statements, Netflix "did not have 30% of its streaming video library captioned." Id. ¶ 31.

On or around February 29, 2012, Hunt posted a blog entry on Netflix's website stating, "In mid December we reached our captioning goal for 2011, when more than 80% of the hours streamed in the US were of content with captions or subtitles available." Id. ¶ 25 & Ex. B. Hunt went on to state the following:

> Our goal is to provide more and more content with captions; however, viewers should expect the gap on the last 20% to narrow more slowly than in 2011, since it includes a large number of titles that are rarely watched, so each hour of captioning added adds less and less to the overall metric.

Id. Ex. B.

The next day, on March 1, 2012, Hunt and Mike Chapman ("Chapman")—an individual who Plaintiff states has been "carefully following Netflix's captioning practices for years," Id. ¶ 27—engaged in the following exchange in the comments section to Hunt's February 29, 2012 blog post:

2

Case No.: 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

> Chapman: NETFLIX LIES! I just re-crunched my Netflix Captioning Stats page and as of today, if you count Number of Movies + Number of TV Episodes, the count is only 51.73% of titles with added captions. If you count MINUTES of programming, that number DROPS to 46.37%. BOTH stats are no where near the 80% number. Where is the data that this *0% number comes from? (Their 30% Figure from last February 2011 was not actually reached until JUNE 2011). Stats are based on numbers from Phlixie.com who gets their data from Netflix's own API data. (see my Stats Page here: http://bit.ly/nf-cc-xls) Where are they getting their numbers? Please share this with others!
>
> Hunt: The 80% is based on the content that people actually watch, and my specific language is precise and correct: "more than 80% of the hours streamed in the US were of content with captions or subtitles available" because we have focused our effort on the content that gets a lot of viewing.
>
> Chapman: So this is an example of Netflix's "New Math": If a 2 hour movie is watched 10,000 times and it is captioned, they count it as 20,000 hours of VIEWED captioned content. Likewise, if a 2 hour movie is watched 2 times and it is NOT captioned, they count it as 4 hours of VIEWED NON-captioned content. My method would say 50% of the 2 movies are captioned, their method would say 99.98% of the VIEWED MINUTES of the 2 movies are captioned. it took almost TWO YEARS for Netflix to get HALF of its catalog captioned. And you are saying it will take even LONGER to get the second HALF captioned?? How long does the Deaf & Hard of Hearing community have to wait for EQUAL access? another THREE years? FOUR years??

Id. Ex. B. Plaintiff has alleged that as of December 21, 2011, Netflix did not have 80% of its streaming video library captioned. Id. ¶ 31.

### 1.2 Procedural History

On March 11, 2011, Plaintiff Cullen filed a class action lawsuit in this Court. See Compl., Docket Item No. 1. Plaintiff filed a First Amended Complaint on April 9, 2011. See Docket Item No. 5. On September 5, 2011 Plaintiff then filed a Second Amended Complaint on behalf of himself and members of an alleged class of others similarly situated. See Docket Item No. 26. In the Second Amended Complaint Plaintiff brought discrimination-based claims under California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51, et seq., and California's Disabled Persons Act, Cal. Civ. Code §§ 54, et seq., for Netflix's alleged failure to provide full and equal access to its

3
Case No.: 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

services. Second Am. Compl. ¶¶ 103–12. In addition, Plaintiff brought consumer protection-based claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq., ("UCL"), False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq., ("FAL"), and Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq., ("CLRA") for Netflix's alleged false promises, misrepresentations, and material omissions concerning the amount of subtitled content, the rate at which Netflix was adding subtitled content, and the date by which a substantial portion of its streaming library would be subtitled. Id. ¶¶ 72–102. On July 13, 2012, the Court granted Defendant's Motion to Dismiss the Second Amended Complaint with Leave to Amend. See Cullen v. Netflix, No. 5:11-CV-01199-EJD, 2012 WL 2906245 (N.D. Cal. July 13, 2011), Docket Item No. 50.

On August 3, 2012 Plaintiff filed a Third Amended Complaint alleging five causes of action. See Docket Item No. 52. Plaintiff brought the First Cause of Action on behalf of the alleged class for violations of the UCL. See Third Am. Compl. ¶¶ 69–71. In support of this claim, Plaintiff contends that the actions described above along with the alleged lack of adequate support tools for deaf persons and alleged imposition of what Plaintiff characterizes as a "deaf tax" constitute UCL violations. Id. ¶ 70. The remaining four causes of action were brought on behalf of Plaintiff Cullen individually: the Second Cause of Action asserts a claim of fraudulent business practices in violation of the UCL; the Third Cause of Action asserts a claim of unlawful business practices in violation of the UCL; the Fourth Cause of Action asserts a claim of violation of the FAL; and the Fifth Cause of Action asserts a claim of violation of the CLRA. Id.

On August 20, 2012, Netflix filed its Motion to Dismiss the Third Amended Complaint, which is presently before the Court. See Docket Item No. 53. The court heard oral arguments of counsel on this motion on November 9, 2012. See Minute Entry, Docket Item No. 67.

## 2 Legal Standards

A complaint may be dismissed for failure to state a claim upon which relief may be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see also Twombly, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

On a motion to dismiss, the court's review is limited to the face of the complaint and matters judicially noticeable. MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986); N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). However, under the "incorporation by reference" doctrine, the court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic. In re Silicon Graphics, Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999).

Finally, although the claims arise under state law, Plaintiff's allegations are subject to the Federal Rules of Civil Procedure. Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting Vess v. Ciba—Geigy Corp. USA, 317 F.3d 1097, 1102 (9th Cir. 2003)) ("[T]he Federal Rules of Civil Procedure apply in federal court, 'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.'"). Specifically, allegations sounding in fraud are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). See Vess, 317 F.3d at 1103–04 (if "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' [then] the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."); Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994) (claims based in fraud "must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud.").

## 3 Discussion

Defendant has moved to dismiss the Third Amended Complaint for two general reasons. First, Defendant asserts that Plaintiff Cullen has not met the standing requirements of the allegedly implicated statutes. And second, in the alternative, Defendant argues that even if Plaintiff Cullen had standing to sue, he fails to state claims upon which relief could be granted.

### 3.1 Statutory Standing

As noted, Plaintiff's Third Amended Complaint alleges violations of three California statutes: the UCL, the FAL, and the CLRA. Each of these statutes has a standing provision. Under the UCL, a plaintiff must allege that he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Similarly, the FAL requires that a plaintiff suffer an "injury in fact and has lost money or property as a result of a violation of" the FAL. Id. § 17535. The CLRA, too, requires that in order to bring suit, a plaintiff must suffer "any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by" the CLRA. Cal. Civ. Code § 1780(a). In sum, in order to have standing, Plaintiff must allege that he has suffered a legally cognizable injury that was caused by the conduct that allegedly amounts to a violation of any of the statutes.

Plaintiff contends that the injury-in-fact he has suffered comes in the form of monetary loss "in an amount equal to the amount he paid for his Netflix subscription." Third. Am. Compl. ¶ 59. He has also stated that the costs of maintaining his Netflix subscription amount to damages. Id. ¶¶ 53, 55. As for the causal requirement of the statutes' standing provisions, Plaintiff contends that his reliance on Hunt's statement in the Feb. 2011 Blog Post about the percentage of subtitled content caused him to maintain his subscription where he otherwise would possibly have terminated it. Id. ¶¶ 22, 53–55; see also Pl.'s Mot. in Opp'n to Def.'s Mot. to Dismiss 1, Docket Item No. 60 ("Although Mr. Cullen had, at times, considered terminating his subscription, he maintained it in reliance on these representations.").

As an initial matter, the Court notes that the assertion that Hunt's statements caused Plaintiff to purchase a subscription to Netflix cannot give rise to standing simply because of the undisputed timeline of events. Plaintiff first subscribed to Netflix in May 2009, well before the statements which Plaintiff alleges caused him harm were made. Therefore, it cannot follow that the statements in the Feb. 2011 Blog Post caused Plaintiff to begin subscribing to Netflix.

Next, the Court disagrees with Plaintiff's notion that he meets the statutory standing requirements because the statements caused Plaintiff to maintain his subscription where he otherwise might have terminated it. As noted, in order to satisfy the statutory standing requirement, a plaintiff must allege actual causation. See Hall v. Time Inc., 158 Cal. App. 4th 847, 855 (2008) ("The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation."). Because Plaintiff's claims "sound in fraud" he must plead with particularity "actual reliance" on the allegedly deceptive, fraudulent, or misleading statements. See Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 793, 794 (9th Cir. 2012); Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 326 (2011). Plaintiff's pleadings fail to establish with certainty that Hunt's statements in the Feb. 2011 Blog Post caused him to continue subscribing to Netflix: Plaintiff alleges that Hunt's statement was only "an important and substantial factor in Mr. Cullen's decision to maintain his Netflix subscription while awaiting greater accessibility to Netflix's video service." Third Am. Compl. ¶ 22; see also id. ¶ 53 ("Plaintiff considered terminating his subscription."); Pl.'s Opp'n to Def.'s Mot. to Dismiss 1 (stating that Mr. Cullen was merely "consider[ing] terminating his subscription" before the Feb. 2011 Blog Post was published). While Plaintiff does assert in the Third Amended Complaint that he maintained his subscription in reliance on the statements, such unsubstantiated assertions, combined with the more equivocal statements of reliance, leads this Court to find that Plaintiff has not met the standing requirements of the statutes.

Furthermore, Plaintiff's pleadings and the factual timeline of this litigation belie Plaintiff's claims of standing based on maintaining his subscription in reliance on the Feb. 2011 Blog Post. In

7

Case No.: 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

the Third Amended Complaint, Plaintiff states that he was aware that Netflix's streaming library had a "lack of meaningful captioning" content. Third Am. Compl. ¶ 53. Moreover, on March 11, 2011, not three weeks after the Feb. 2011 Blog Post, Plaintiff filed suit in this Court alleging that the Feb. 2011 Blog Post and other statements made by Hunt misrepresented the amount of closed-captioning in Netflix's online streaming content. See Compl., Docket Item No. 1. In that initial Complaint, Plaintiff alleged the following:

> 27. In a February 24, 2011 blog entry posted on Netflix's website, Neil Hunt falsely represented there are "more than 3,500 TV episodes and movies" with subtitles in Netflix's streaming library, "representing about 30% of viewing."
>
> 28. Mr. Hunt further represented "[m]ore subtitles are being added every week, and we expect to get to 80% viewing coverage by the end of 2011 . . . ."
>
> . . .
>
> 30. Each of these statements was false and misleading when spoken.

Id. ¶¶ 27–30. That Plaintiff was induced into maintaining his subscription by the statements in the Feb. 2011 Blog Post less than three weeks before Plaintiff alleged that those same statements were false, deceptive, and misrepresentative is a notion that does not cross the Rule 9 pleading threshold into plausibility.

Accordingly, because Plaintiff has failed to sufficiently plead that his injuries were caused by the allegedly false, deceptive, or misrepresentative statements, he has failed to meet the UCL's, FAL's, and CLRA's respective statutory standing requirements.

### 3.2 Sufficiency of Plaintiff's Claims

Even if Plaintiff met the statutory standing requirements, Defendant argues, the Third Amended Complaint should still be dismissed because he has failed to state claims upon which relief could be granted. The Court will address whether the Third Amended Complaint can withstand Defendant's motion by the subject matter of each of Plaintiff's claims.

8
Case No.: 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

### 3.2.1 Claims of Fraud, Deception, or Misrepresentation (Second, Fourth, and Fifth Causes of Action)

Three of Plaintiff's five claims are founded on allegations that Defendant's statements were fraudulent, deceptive, or misrepresentative. Plaintiff's Second Cause of Action alleges that Defendant's "acts, omissions, misrepresentations, practices, and non-disclosures of Netflix" constitute violations of the UCL's "fraudulent" prong. Third Am. Compl. ¶¶ 72–74. Plaintiff's Fourth Cause of Action alleges that the Defendant's advertising practices and statements "concerning the amount of subtitled content, and its efforts to add more subtitled content" were misleading so as to constitute a violation of the FAL. Id. ¶¶ 78–81. And Plaintiff's Fifth Cause of Action contends that Defendant's allegedly "false" and "misle[ading]" statements and the effect those statements allegedly had on consumers have constituted a violation of the CLRA. Id. ¶¶ 82–85. In sum, these three causes of action are grounded in the allegation that Hunt's statements in the Feb. 2011 Blog Post—and possibly the February 29, 2012 blog posting and March 1, 2012 comments—constitute fraud and misrepresentation which have caused Plaintiff to be injured. See id. ¶¶ 22–31, 51–59; see also Pl.'s Opp'n to Def.'s Mot. to Dismiss 15.

The UCL prohibits "unlawful, unfair or fraudulent" business acts or practices. Cal. Bus. & Prof. Code § 17200. The UCL also prohibits "unfair, deceptive, untrue or misleading advertising and any act prohibited by [the FAL]." Id. The FAL prohibits the making or dissemination of a statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ." Id. § 17500. And the CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices . . . ." Cal. Civ. Code § 1770(a); see also id. § 1770(a)(1)–(22) (enumerating specific prohibited practices). These laws prohibit not only advertising which is false, but also advertising which, although true, is either misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public. Williams v. Gerber Prod. Co., 552 F.3d 934, 938 (9th Cir. 2008). UCL, FAL, and CLRA claims grounded in fraud are governed by the "reasonable consumer" test. Id. Under the reasonable

9
Case No.: 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

consumer standard, the plaintiff must "show that members of the public are likely to be deceived." Id. (internal citations omitted).

California courts "have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." Id. However, courts have dismissed complaints as a matter of law because they did not meet the "reasonable consumer" standard. See Freeman v. Time Inc., 68 F.3d 285, 289 (9th Cir. 1995) (affirming dismissal of UCL, FAL, and CLRA claims because statements promising sweepstakes payout in exchange for purchasing magazine subscription unlikely to deceive "person of ordinary intelligence").

The heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to all UCL, FAL, or CLRA claims that are grounded in fraud. See Vess, 317 F.3d at 1103–06. Under Rule 9(b), "[a]verments of fraud must be accompanied by the 'who, what, when, where and how' of the misconduct charged." Kearns, 567 F.3d at 1124 (quoting Vess, 317 F.3d at 1106). In attempt to satisfy this aspect of the Rule 9(b) pleading standard, Plaintiff offers the following:

- Who: Netflix / Neil Hunt [citing to the Third. Am. Compl. ¶ 16];
- What: representations that Netflix's streaming video library was 30% captioned and would be 80% captioned by the end of 2011 [citing to id. ¶¶ 16, 18 & Ex. A];
- When: February 24, 2011 [citing to id. ¶ 16 & Ex. A];
- Where: In Netflix's blog [citing to id.];
- How (or why) the misrepresentation was misleading: Notwithstanding Hunt's statements, "Netflix's CEO . . . told shareholders at a May 29, 2009 annual meeting that Netflix was not actively concerned with captioning," and "[a]t the time Mr. Hunt made his blog entry, Netflix did not have 30% of its streaming video library captioned. As of December 31, 2011, Netflix did not have 80% of its streaming video library captioned" [citing to id. ¶¶ 31–32].

Pl.'s Opp'n to Def.'s Mot. to Dismiss 18. At the heart of Plaintiff's claims of fraud, deception, and misrepresentation lies a discrepancy between the ways he and Defendant claim to calculate the percentage of online streaming content with closed captioning. On one hand, Plaintiff calculates the percentage based on the number of movie titles and television episodes that have closed captioning. Third Am. Compl. ¶¶ 28–31. On the other hand, Defendant claims to calculate this by

10
Case No.: 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

the percentage of content actually watched online by Netflix users that features closed captioning—what Defendant characterizes as "viewing coverage" or a "usage-based measure." Def.'s Mot to Dismiss 11; see also Third Am. Compl. Ex. B (where Hunt explained in his comment to the blog postings of February 29, 2012 that the percentage is "based on the content that people actually watch"). Plaintiff argues that even if the figure was based on the calculation Defendant claims it was, the statements were misleading and deceptive and therefore still constitute a violation of the aforementioned statutes.

The Court has concluded that the statements in the Feb. 2011 Blog Post do not constitute fraud, deception, or misrepresentation so as to rise to a violation of the UCL, FAL, and CLRA. First, the statements in Feb. 2011 Blog Post do not appear to be false. The precise language of those statements was "30% of viewing" and "80% viewing coverage." Third Am. Compl. Ex. A. Contrary to Plaintiff's interpretation, this language did not state that a certain percentage of Netflix's movie titles or television episodes contained closed captioning, but rather that the percentage was "viewing coverage." As this Court suggested in the Order Dismissing the Second Amended Complaint, Plaintiff's presentation of his own calculation about the percentage of closed captioning of Netflix's online streaming content does not contradict Defendant's claim that the captioned content represented 30% of viewing content—a usage-based figure—or that Defendant expected to reach 80% by the end of 2011. See Cullen, No. 5:11-CV-01199-EJD, 2012 WL 2906245, at *8. In this, the Third Amended Complaint, Plaintiff has not alleged facts showing that Defendant's assertions and calculations turned out to be false.

Secondly, in the alternative, the Court finds that Plaintiff's pleadings have not met the "reasonable consumer" standard courts use when determining whether statements that might not technically be false could be characterized as deceptive. As noted, under this standard a plaintiff must "show that members of the public are likely to be deceived." Williams, 552 F.3d at 938. In attempt to satisfy this burden, Plaintiff, points to the notion that Chapman interpreted the statements in a similar way that Plaintiff interpreted them. Third Am. Compl. ¶¶ 25–27; Pl.'s

11
Case No.: 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

Opp'n to Def.'s Mot. to Dismiss 16–17. Other than Chapman's interpretation, Plaintiff only offers his conclusory iterations that a reasonable consumer would interpret the statements as he did and would thus be misled by the statements. See Third. Am. Compl. ¶¶ 27–29; Pl's Opp'n to Def.'s Mot. to Dismiss 15. The phrase "[l]ikely to deceive" in the Williams reasonable consumer test "implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." Lavie v. Proctor & Gamble Co., 105 Cal. App. 4th 496, 508 (2003). Rather, "the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances could be misled." Id. As such, the Court concludes that Plaintiff's conclusory assertions and references to a single consumer's interpretations are insufficient to meet this standard. The Court notes that this analysis would also apply to the statements in the blog post of February 29, 2012 and Hunt's comments to that post.

Accordingly, the Court concludes that the Second, Fourth, and Fifth Causes of Action fail to state claims of violations of the UCL's, FAL's, and CRLA's provisions against fraud, deception, or misrepresentation.

### 3.2.2 Claim of UCL Violation Based on the "Unlawful" Prong (Third Cause of Action)

Plaintiff's Third Cause of Action relies on the "unlawful" prong of the UCL, which proscribes "unlawful" business acts or practices. Cal. Bus. & Prof. Code § 17200. Because Plaintiff's claims of violations of the UCL, FAL, and CLRA fail, his UCL claim premised on "unlawful" acts has no basis and must also fail. See Ingels v. Westwood One Broad. Servs., Inc., 129 Cal. App. 4th 1050, 1061 (2005) ("If the [underlying] claim is dismissed, then there is no 'unlawful' act upon which to base[] the derivative [UCL] claim."); Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1190–91 (N.D. Cal. 2009) (dismissing UCL claim because court dismissed "all . . . predicate violations"). Accordingly, the Court concludes that the Third Cause of Action fails to state a claim upon which relief could be granted.

12
Case No.: 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

### 3.2.3 Claim of UCL Violation Based on the "Unfair" Prong (First Cause of Action)

Plaintiff's First Cause of action relies on the "unfair" prong of the UCL, which prohibits "unfair" business acts or practices. Cal. Bus. & Prof. Code § 17200. An unfair business practice under the UCL is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008) (omitting internal citations). To test whether a business practice is unfair, the Court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255, 1268 (2006) (omitting internal citations).

Plaintiff's claims under the "unfair" prong of the UCL rely in part on allegations that Hunt's statements were fraudulent, deceptive, or misrepresentations. As discussed above, the Third Amended Complaint does not make allegations that the statements were fraudulent, misleading, or otherwise unlawful sufficient to withstand a motion to dismiss. As such, Plaintiff's claims that in respect fail to state a claim for which relief could be granted.

Plaintiff also alleges in the First Cause of Action that Netflix's imposition of a so-called "deaf tax" also violates the "unfair" UCL prong. To that effect, Plaintiff argues that the DVD-by-mail subscription plans—which he considers to provide sufficient access to video programming for deaf individuals like himself—cost more than the online-only streaming subscription plans. See Third Am. Compl. ¶¶ 35–50. For the reasons set forth in the Order Dismissing the Second Amended Complaint, the Court rejects the argument that Netflix's pricing scheme violates the "unfair" prong of the UCL. See Cullen, No. 5:11-CV-01199-EJD, 2012 WL 2906245, at *9 ("Cullen has not alleged facts about any potential utility of charging a higher subscription fee for the more accessible DVD-by-mail plan than for the streaming-only plan price. Thus, Cullen has not stated a plausible claim that the gravity of the harm outweighs the utility of the conduct and thus that the price difference is immoral or unscrupulous.").

Finally, in support of the First Cause of Action, Plaintiff argues that Netflix's lacks adequate support tools for deaf members such as "a function to easily search for captioned titles and/or employees at Netflix specifically responsible for interacting with and providing assistance to the deaf and hard of hearing, and Netflix's anemic captioning rate." Third Am. Compl. ¶ 32; see also id. ¶ 70. The Court finds that Plaintiff has not sufficiently alleged facts so as to withstand a motion to dismiss because Plaintiff's only support of this notion is the unsupported and conclusory assertions that the weight of Plaintiff's and class members' damages outweigh the utility of Netflix's alleged failure to provide what Plaintiff deems are adequate support tools for deaf subscribers. See id. ¶¶ 33–34. Accordingly, Plaintiff's claim in that respect cannot withstand Defendant's Motion.

For these reasons, the Court concludes that the First Cause of Action fails to state a claim upon which relief could be granted.

### 4   Leave to Amend

For the reasons stated above Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint will be granted. The Court now turns to whether the dismissal will be granted with leave to amend. Generally, leave to amend should be allowed "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv–Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986). Where amendment to the complaint would be futile, the court may order dismissal with prejudice and without leave to amend. Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996). Such is the case here.

The Third Amended Complaint, which is the object of the present Motion to Dismiss, is Plaintiff's fourth complaint filed before this Court. As noted the preceding complaint—the Second Amended Complaint—was dismissed by the Court's order. See Cullen, No. 5:11-CV-01199-EJD, 2012 WL 2906245. In the present Order, the Court has found that Plaintiff's claims do not

14
Case No.: 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

sufficiently allege violations of the UCL, FAL, or CLRA. The Court has determined that the allegation of other facts consistent with the Third Amended Complaint could not cure the deficiency. The Court has also determined that Plaintiff lacks standing to bring claims under the UCL, FAL, or CLRA because he has not met the statutory standing requirements. As such, even if Plaintiff could allege facts that would show a violation of any of the statutes, he still would not have a viable cause of action because he would have no standing to sue.

In sum, allowing Plaintiff to amend the Third Amended Complaint would be futile. For these reasons as well as those stated above, the Court thus deems it appropriate to dismiss the Third Amended Complaint without leave to amend.

**5    Conclusion and Order**

Based on the foregoing, Defendant's Motion to Dismiss the Third Amended Complaint is GRANTED WITHOUT LEAVE TO AMEND.

Since this Order effectively disposes of the entire case, the Clerk shall close this file upon entry of Judgment.

**IT IS SO ORDERED**

Dated: January 10, 2013

_____
EDWARD J. DAVILA
United States District Judge

15
Case No.: 5:11-CV-01199-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT